## DAVID STAATS,

### *vs.*

## WILLIAM HERBERT, late Sheriff, and JAMES ARMSTRONG, Sheriff.

*New Castle, Sept. T. 1872.*

The Sheriff has no right of action on a bond, taken by him to secure the forthcoming of goods, levied upon by him under execution, until he has been damnified, by being held liable for the goods to the execution credi-tor, and then only to recover the amount of his loss actually sustained.

Even in a case where the defendant in a judgment has an adequate remedy at law by application to the Superior Court to open the judgment, a court of equity will interfere by injunction if the necessity arises when the Superior Court is not in session, the judges of the Superior Court having, in this State, no power to interfere in vacation.

A forthcoming bond is not an official one in any proper sense and the creditor has no legal interest in it. It is wholly voluntary and for the private benefit of the officer. In these respects it differs from a replevin bond.

In this State, upon judgments entered, by warrant of attorney, upon a bond in a penal sum, with condition other than for the payment of money, there is no proceeding at law for suggesting breaches and assigning the damages.

Judgment entered by warrant of attorney not being within the Stat. Will. III, and our own Statute, are entered for the penalty, and, where the condition is not for the payment of money, but for the performance of some collateral condition, the execution follows the judgment and the creditor proceeds at his peril, subject to the interference of a court of equity, if he takes execution before a breach has been committed, or, after a breach, for a larger sum than the damages actually sustained.

The Court of Chancery will in a proper case restrain the execution, direct an issue of *qantum damnificatus,* and, when the damages are ascertained, upon the trial of such an issue, it will grant relief upon the payment of such damages.

Purely legal questions concerning the practice of the common law court depending upon matter of record in that Court ought to be determined there and not in the Court of Chancery.

BILL IN EQUITY FOR AN INJUNCTION AND TO IM-PEACH A JUDGMENT.—This bill seeks to enjoin an execution, issued upon a judgment, entered in the Superior Court for New Castle County, No. 661 to May Term, 1870, for $2950, at suit of William Herbert, late sheriff, against Jacob Staats and David Staats. It also seeks a decree to set aside the judgment. The case made by the bill is this :—

Susan B. Justis held a judgment against Jacob Staats and William S. Deakyne for $2500, entered in the Superior Court, No. 348 to May Term, 1867. A *fieri facias* was issued on this judgment to the November Term, 1868, and delivered to the defendant William Herbert, then sheriff, to be executed. Under this *fieri facias* Herbert levied on goods of Jacob Staats and returned the writ "stayed by "attorney for plaintiff until further orders." A *venditioni exponas* was issued January 29, 1869, to the ensuing May

Term, 1869, directed to Herbert, as then late sheriff, upon which he returned "stayed by plaintiff's attorney un-"til further orders." While this *venditioni exponas* was in Herbert's hands he took from the defendant in the execution, Jacob Staats, a forthcoming bond for the goods which had been levied upon and which were specified in the *venditioni exponas*, the bond being dated March 7, 1869, and taken in the name of Herbert, as late sheriff, in the penal sum of $2950.00. The bond is not in evidence but is treated on both sides as having been with condition in the usual form of forthcoming bonds. An *alias venditioni exponas* was issued, No. 226 to May Term, 1870, and delivered to Jacob Richardson, then sheriff, to be executed, under which some of the goods levied on, and for which a forthcoming bond had been given, were sold for $564.50 and as to the residue the sheriff returned that they are not forthcoming. The goods not forthcoming were specified in the Sheriff's return to be 2 yearling cattle, which had been appraised under the levy at $15.00 ; 3 hogs, appraised at $14.30 ; 1 ox cart, appraised at $10.00 ; a crop of corn in the field at the time of the levy, appraised at $200.00, and a crop of wheat in the ground at the time of the levy, appraised at $180.00, amounting in all to $419.30. The proceeds of the goods sold being insufficient to pay the execution, Herbert caused judgment to be entered on the forthcoming bond, No. 661, May Term 1870. No indorsement was made on the record as to the condition of the bond or its object. A *fieri facias* was issued, No. 97, to November Term, 1871, for the sum of $2950, as the debt, with an indorsement on the back made by the Prothonotary under the direction of the attorney in the judgment that the balance due was $419.30, which was the appraised value of the goods returned by Sheriff Richardson as not forthcoming under this execution. A levy was made upon the goods of the complainant by the surety in the forthcoming bond. Pending this execution the bill was filed and the injunction issued.

The answer admits the facts above stated, alleging additionally, that the *fieri facias* and original *venditioni exponas* were stayed upon the undertaking of Jacob Staats, the principal defendant in those writs, that he would give a forthcoming bond and pay the money due before the return day of the writs, respectively.

The prayer of the bill is two-fold :—

First, for a decree that the judgment may be satisfied, and that the defendant, Herbert, be perpetually enjoined from collecting it by execution or otherwise.

*G. B. & J. H. Rodney*, for the complainants.

1. The forthcoming bond taken by the sheriff was invalid.    It is the duty of the sheriff under a *fi. fa.* either to return the money or a levy, if there are goods, or he is bound for the debt. *Rev. Code*, (1852,) 402, *Secs.* 46 *and* 50.    But after the return he has no authority to take a bond, more especially an outgoing sheriff whose duties and process are specific and limited. *Rev. Code* (1852) 396.

Herbert, as the outgoing sheriff, had no right to take possession of the goods, but only to sell.    By the levy, originally as sheriff, he acquired a right of possession, not ordinarily actual possession as is always done in England. The practice is for him either to take actual possession, or to take a bond of indemnity before the return of the sale, not afterwards.

The return determines the extent of his liability.    If the goods are levied and unsold he is liable for their forthcoming and must either have the goods or a bond to represent them.    But if the return is stayed, by order of the plaintiff, he is discharged from responsibility for their forthcoming, though the lien remains and they may, if found, be sold under a *venditioni exponas*.    This and no more the late sheriff may do under the *venditioni exponas*.

But he cannot after the return of the levy take pos-
session or, what is equivalent, the bond.   He had no
power but that  conferred by the writ, not to make the
money as under a *fi. fa.* but to expose to sale the speci-
fic goods as they stood.   He had no power officially as
sheriff, for he was out of office ; none springing from the
levy, for that and all powers springing from it were closed
by the return of the *fi. fa.*  To omit sale on any condition
of his own was a violation of the writ ; if sale were delayed,
as might be by the creditor, then it must be under condi-
tions with which the sheriff had no legal connection, and
the return of " stayed by plaintiff's attorney &c." exoner-
ated the  sheriff from responsibility for the safety of the
goods. · *State vs. Gemmill,* 1 *Houst.* 15.

If then there is no responsibility for the goods,the bond
cannot be be valid.    His responsibility and authority to
take the bonds are correlative.

It is not a personal  but an official bond, taken by
Herbert in the capacity of late sheriff.    This is apparent
on its face.   Then if he had no authority, as late sheriff,
to take it, the bond is void.   It could not be taken by the
officer for the benefit of the creditor, but only for his own
indemnity against an existing responsibility.   If then the
late Sheriff was under no liability, the taking of the bond
was a legal fraud, because it was on that consideration the
bond was given.        °

This was a  fraud, not of fact, but in law, springing
out of the bond's being taken under color of an official
authority which did not exist. All the facts out of which
such fraud arises are upon the record.

But, if valid  at all, the  bond could  not properly in-
clude the growing crops, corn and wheat. These, not be-
ing subjects of  delivery  to the surety, were not  a proper

subject of a forth-coming bond. *Sewell's Law of Sh'ff* (214).

The date of the levy is September 14, 1868 while the writ issued October 10th. This is a manifest discrepancy, and the levy must have been made October 14th, with return to the November Term, 1868.

The bond was taken March 17th, 1869. The sheriff had no authority to leave these perishable crops until March, 1869. The corn cannot be presumed to have been then found and identified so that the Sheriff could then take and deliver possession of it, and, if he could not do this, he could not take the bond. In such case the corn had no legal existence for the purpose of levy.

The wheat was emblements, subject to other rights, fixed to the soil, part of the freehold,—not subject to be taken possession of, but only to be sold as growing, with a right to take possession when cut. Therefore as no possession of it could be taken or delivered by the sheriff, no bond could be taken to protect a possession which had no existence.

2. The execution was irregular. We do not impeach the judgment but no execution could issue until damage was actually sustained and the amount judicially ascertained, which thus would become the debt to be collected.

There is nothing on record to connect the return of Sheriff Richardson with the indorsement on the narr. That return was no more than an inducement to counsel, but did not bind him. He might have indorsed more and there would have been no redress. Whatever process ascertains the amount for execution must be obligatory on all parties, as a writ of inquiry or *scire facias*. Besides, this proceeding was wholly *ex parte* and without notice to the party affected by it.

65—DEL. CH. IV.

*Barr* and *Gray*, for the defendants.

Apart from all technical considerations, the equity is all with the defendants,—or rather the creditor who is represented. For it is the simple case of a lenient creditor, having power to sell his debtor's goods, staying proceedings upon condition (which must be taken to have been the real arrangement) of a forthcoming security, a security given in form to the officer, but in fact and substance being for the benefit of the creditor.

The allegation of fraud or imposition is wholly unsustained. If there was any mistake it was one of law which is not reliable and there must have been diligence. 1 *Sto. Eq. Jur. Sec.* 101 ; *Ib. Secs.* 146 *and* 8, 152 *and* 191 ; 1 *Madd. Ch. Pr.* 59-60.

The official powers of the late sheriff were ample to justify the taking of the bond. *Rev. Code* (1852) 396.

The return of 'stayed, &c.,' may release from liability for not executing, as for want of diligence, but not from responsibility as to the custody of the goods. The creditor loses no benefit by the stay, *Houston vs. Sutton,* 3 *Harring.* 40 ; *Hickman vs. Hickman Ib.* 484.

But no irregularity in taking the bond, under any practice in the Superior Court, can be here set up against the complainant's solemn bond voluntarily given and without fraud or mistake relievable in equity. All considerations as to Herbert's official powers or his liabilities under the stay are irrelevant. If, notwithstanding all this, complainant chose to give the bond he must abide by it. There was a consideration for it, of indulgence to the debtor, by the stay. From the order of the incidents, it is presumable that the stay and the bond were parts of one arrangement and the former the consideration of of the latter.

With respect to the regularity of the execution, there is nothing on the docket but a judgment for $2900, which is not stated as a penalty,—nothing to shew that the bond was one of indemnity. This Court will not interfere to correct irregularities in the proceedings of the Superior Court or restrain execution on such ground. *Adams Eq.* 435 ; *Suydam vs. Beals et al.*, 4 *McLean* 12 ; *Walker vs. Robbins*, 14 *How.* 584. That Court can grant all such relief and there is no need of equitable relief. 1 *Tidd. Pr.* 562 ; 2 *Ib.* 1072.

It is true, that Court could not be applied to until after sale under the execution. But the utmost effect of this would be to sustain a temporary injunction until the sitting of the Superior Court and not the injunction here prayed for.

A sheriff's return is not questionable except for fraud, and we claim that the debt was ascertained by sheriff Richardson's return of loss of goods, at least sufficiently so in equity.

As to the wheat and corn, they were the subjects of a levy and whatever may be levied on may also be secured by a forthcoming bond. 1 *Sto. Eq. Jur.* 333 ; *Jackson vs. Dutton*, 3 *Harring.* 102.

THE CHANCELLOR :—

The argument of this cause embraced two general questions, viz: First, whether the judgment in controversy should not be decreed to be satisfied on the ground of invalidity in the bond upon which it was entered ; and, second, whether, at all events, the execution of it should not be enjoined under the present condition of the defendant Herbert's claim. We will first consider the latter question.

Assuming the bond to be valid and the judgment

duly entered, and of force, still there can be no doubt that the execution was illegally issued. The judgment, although upon its face for a debt, stands in fact for an indemnity, having been entered upon what is known as a forthcoming bond, being a bond given in the general sum of $2,900.00, conditioned in effect to be void, if Herbert, the obligee in the bond, should be kept harmless and indemnified against loss by reason of the non-forthcoming of certain goods of Jacob Staats upon which Herbert as sheriff, had levied, under the *fieri facias*, and which he was commanded by the *venditioni exponas* to sell, but which he had left in Jacob Staats' possession. Although part of these goods were not forthcoming Herbert has not been held liable for them to the creditor in the judgment under which they were taken in execution—so far the loss is the creditor's and not Herbert's. The latter is not entitled to proceed by execution under this judgment until he is damnified and then only to recover the amount of his loss actually sustained. And although the face of the judgment does not shew the purpose for which it was confessed, a court of equity will restrain him from using the judgment contrary to its real design. It was suggested that the complainant had an adequate remedy at law by application to the Superior Court in which the judgment was entered to set aside the execution. It is true that the courts of law do exercise an equitable jurisdiction over their own judgments and process, and will relieve against fraudulent or illegal use of their process, except where the circumstances are such as to render an investigation in chancery more convenient or effectual, in which case our own courts of law have sometimes remitted the parties to this court. It may be that the Superior Court, if in session, might on proper application have set aside this *fieri facias* and directed an issue to try the fact as to Herbert's having sustained damage and if so what amount; but, however that may be, the Superior Court not being in session when this execution was levied

and pressed to a sale, there was on that ground necessity for the interference of a court of equity. I have been referred on this point to *Lansing vs. Eddy*, I *Johns. Ch.* 49, in which an injunction was refused to stay a sale under an execution on the ground that the judgment had been fully paid and satisfied. But, in that case, the injunction was refused upon the special ground that the sale could be stopped by an order of a judge of the court in which the judgment moved, a remedy at law prompt and adequate. We have in this State no such proceeding at law and hence the necessity of the interference of a court of equity.

The argument that this judgment could be executed for the use or benefit of the creditor in the judgment under which the non-forthcoming goods were levied upon is not tenable. The creditor has no legal interest in the forthcoming bond. It was taken, not as a security to the creditor for the debt, but as a personal indemnity to the officer, against his liability to the creditor for the non-forthcoming of the goods or their value. I consider the bond not as an official one in any proper sense, but as a private obligation. It was taken under no law, nor was the taking of it an official duty to protect some interest under the judgment, but it was wholly voluntary and for the private benefit of the officer. He was not bound to assign it to the creditor, nor could he compel the creditor to accept it. It would have served its full purpose had the obligee not been described in it as "late sheriff." This addition to his name added nothing to its operation, and was mere surplusage. A forthcoming bond differs in these respects from a bail bond, or a replevin bond, which are taken pursuant to law, as an official duty, for the benefit of parties to the proceeding, and to an assignment of which, upon breach of the condition, they are entitled by the statute.

In the argument of this cause the question was much

discussed whether even if the obligee in the forthcoming bond, Herbert, had in fact been damnified he could take execution upon the judgment, without some proceeding at law, first had, to ascertain judicially upon the record the fact that damage had been sustained and to what amount, so that execution might go for such amount only. A *scire facias* or an inquisition of damages upon breaches suggested on the record were suggested by counsel as proper and necessary proceedings,—one or the other of them. But it appears that upon judgments entered by warrant of of attorney, as this is, upon a bond in a penal sum with condition other than for the payment of money, there is no proceeding at law for suggesting breaches of the condition and assessing the damages. Judgments entered under warrants of attorney were held, by construction, to be not within the Statute of 8 and 9 Will. III for ascertaining damages in suits on bonds and penal sums, and such judgments are expressly excepted from our statute on the same subject. (*Rev. Code* 416.)

At common law, prior to the Statute of Will. III, all judgments recovered on bonds or penal sums were rendered for the whole penalty upon proof of a breach of the condition, without any proceeding at law to assess the damages ; and under the common law rule, that execution must follow the judgment, executions, issued upon such judgments, went for the whole penalty, subject to the direction of the plaintiff on the judgment as to the sum to be collected under the execution. If more than the damage actually sustained was exacted from the defendant he could be relieved only by a court of equity. 1 *Tidd.* 584; *Foster on Scire Facias* (*73 Law Lib.*) (33) ; * 2 *Burr* 824; 5 *T. R.* 636.

It was to obviate this necessity of a resort to equity

---

*This treatise contains the fullest exposition of the Statute of 8 and 9 Will. III and of the common law prior to it.

that the Statute of Will. III, and our own on the same subject, were passed. These statutes provide that in all suits on bonds and penal sums the damages shall be assessed upon breaches either assigned in a case pleaded to issue, or suggested on the record, in the case of a judgment by default or on demurrer ; and the damages being thus ascertained, the judgment is to be rendered for their amount only. But judgments entered under warrants of attorney not being within the statute are governed by the common law ; and consequently, all such judgments are entered for the penalty as debt, and execution goes for the penalty, with no method of ascertaining, upon the record, the actual damage sustained, except, that when the judgment entered under a warrant of attorney is to secure a money debt, it is required under our statute, (*Rev. Code* 391,) that the real debt, with the time from which interest is payable, be entered on the record ; and although execution even then goes for the penalty, the real debt, with interest, being indorsed on the execution, is alone collected. But where the condition of the bond, on which judgment is entered under a warrant, is not for the payment of money, but for the performance of some collateral undertaking, there is no statute applicable, and consequently, the execution following the judgment goes for the penalty without anything on the record to restrain the plaintiff from collecting the whole. He proceeds at his peril, subject to the interference of a court of equity, if he takes the execution before any breach of the condition has been committed, or, if after a breach he directs the collection of a larger sum than the damages actually sustained. This Court in a proper case will restrain the execution, direct an issue of *quantum damnificatus*, and, when the damages are ascertained upon the trial of such an issue, it will grant relief upon the payment of such damages. 2 *Story's Eq. Jur. sec.* 1314 ; *Sloman vs. Walter*, 1 *Bro. C. C.* 418 ; *Hardy vs. Martin*, 1 *Cox* 64 ; *Errington vs. Aynesley*, 2 *Bro. C. C.* 342.

It is, then, under this state of the law that the present case comes before the Court. Assuming the judgment in the forthcoming bond to be valid, the execution is regular on its face. It properly follows the judgment in the amount of it, which is the penalty of the bond. There was nothing and could be nothing on the record of the judgment to prevent the plaintiff at law from taking execution at any time and for the whole penalty ; but this Court will restrain him from using the judgment except for its real purpose, which was an indemnity. Now it appears from the whole case as made up by the bill and answer, that Herbert has never been held liable for the non-forthcoming of the goods, with respect to which the bond in question was given. He has sustained no damage. This appearing by the case made before the Court, it becomes unnecessary to direct an issue of *quantum damnificatus.* A decree may, therefore, be made in the case as it stands, continuing the injunction already issued so far as to restrain further execution upon this judgment, until the plaintiff in it shall have sustained damage from the breach of the condition of the bond upon which the judgment was entered. I cannot make the present injunction perpetual, for *non constat* that Herbert may yet sustain damage. I ought not to conclude that question, but should leave Herbert free hereafter to proceed again, though still at his peril.

Upon the other branch of the case, as argued ; that in which the validity of the bond was drawn into question, it does not seem to me proper to make any decree. It was argued that the forthcoming bond was illegally taken on two grounds : 1st, because Herbert was at the time out of office ; and, 2nd, because, by the stay of the *fieri facias* under the order of the plaintiff's attorney, he stood discharged from responsibility for the safe keeping of the goods levied upon. Now, these are purely legal questions, such as

concern the practice of the common law court, depending upon matter of record in that court, and which ought to be determined there. The whole subject is within the equitable jurisdiction of the Superior Court over judgments entered upon warrants of attorney, to be examined under a rule to shew cause why the judgment should not be vacated as having been entered upon a bond and warrant of attorney executed either illegally or without consideration. For this object of the bill the defendant having an adequate remedy, this Court need not interfere ; and in such a case it ought especially to refrain from doing so, since it would thereby unnecessarily draw to itself questions of merely legal cognizance.