## J. A. PHILLIPS v. W. A. CRIPS & BROTHER, W. S. CRIPS, S. P. CRIPS, ROSE L. CRIPS and ANNA V. CRIPS, Appellants.

**Modification of Inte 1 Contract: EVIDENCE.** Plaintiff claimed that by agreement with defendant the rate of interest on a mortgage was changed from seven to eight per cent. at the time when a second mortgage on the same property was given, on which the interest was seven per cent. Defendant was at all times in default on his interest. The evidence showed a payment by defendant, after the semi-annual interest on the first mortgage

was due, and before that on the second mortgage was due, of an amount equal to eight per cent., and a payment after the interest on the second mortgage was due of an amount equal to seven per cent. Future payments of interest were of the same charact r. *Held*, sufficient to show that the interest agreed upon for the first mortgage was eight per cent.

ALTERATION OF INSTRUMENTS. Where it is expressly agreed that the rate of interest on a note shall be changed from seven to eight per cent., the payee can make the alteration on the note without affecting its validity, though without the knowledge of the payer.

**Appeal:** ABSTRACTS. *Affirmance.* Supreme Court Rule 20 provides that the abstract shall contain so much of the record as may be necessary to an understanding of the question to be determined. Rule 68 provides that all immaterial matter shall be omitted. *Held*, that where some thirteen hundred questions and answers are set out in full, and the remaining answers printed in full, simply omitting questions, thereby bringing into the record a mass of irrelevant matter, the court will affirm the judgment, as authorized by Rule 21.

*Appeal from Wapello District Court.*—HON. FRANK W. EICHELBERGER, Judge.

.,THURSDAY, MAY 25, 1899.

ACTION on a note of ten thousand dollars, dated April 3, 1893, and payable in five years, on which three semi-annual interest payments had been made, and also to foreclose a mortgage securing the same. The mortgage contained a condition that the note should become due on failure to pay the interest promptly. The answer set up that the note had been materially and fraudulently altered by changing the rate of interest from seven to eight per cent., by reason of which it became void, and the defendants pray to go hence with their costs. In reply the plaintiff admitted having changed the rate of interest in the note, as alleged, but averred that such change was made innocently, and in pursuance of an understanding had with the payers. There was a decree for plaintiff as prayed. The defendants appeal.—*Affirmed.*

*W. S. Coen* and *E. E. McElroy* for appellants.

*McNett & Tisdale* for appellee.

LADD, J.—The plaintiff changed the rate of interest from 7 to 8 per cent. in the ten thousand dollar note, dated April 3, 1893, and secured by mortgage, by drawing two lines through the "seven," with ink of a color different from that in the body of the note, and writing "eight" above it. No effort whatever was made at concealment. This was done immediately after receiving the four hundred dollar check from the defendants, April 16, 1894, and, as plaintiff insists, in pursuance of an agreement that it should be so changed, made the previous December. Interest at the rate of seven per cent. per annum up to October 3, 1893, had been paid in January, 1894. In December of 1893, by an arrangement with the defendants and the First National Bank of Ottumwa, the plaintiff undertook to carry an additional loan of ten thousand dollars, secured by second mortgage on the same property. The details of the transaction need not be set out, further than to say the plaintiff claims it was then agreed the note secured by the first mortgage was to be changed so as to bear eight per cent. interest, and those secured by the second mortgage were to bear seven per cent. only, and that by some oversight or mistake the first note was not changed, and the last were erroneously prepared to bear eight per cent., instead of seven per cent., as agreed. The defendants, on the contrary, insist that the first note was not mentioned or discussed, and that the notes secured by the second mortgage were prepared in accordance with the understanding then had. It may be added that the material difference in these contentions is something over fifty dollars in interest, resulting from the fact that the notes secured by the second mortgage mature earlier than the first note. A detailed review of the evidence will serve no useful purpose. We shall only mention several

interest payments, which seem very decisive in this con-. troversy. The interest on all these notes was payable semi- annually. That the check of four hundred dollars given April 16, 1894, was in payment of interest on one of these loans is not disputed. At that time interest on the first note was overdue thirteen days, and that on the notes secured by the second mortgage would not be payable until June 20, 1894. On which did defendants intend it should be applied? If on the first note, then they must have proposed to pay interest as plaintiff insists was agreed. Their circumstances were not such as to lead any one to suspect an intention to pay interest in advance. With plaintiff it was always in arrears. Again, they gave a check for three hundred and fifty dollars, in payment of interest, July 10, 1894. At that time the installment on the second mortgage notes had been overdue since June 20, 1894, and that on the first note would not mature until October 3d following. On which did they intend this to be applied,—that due or to become due? If on that which was due, then they only proposed to pay interest at the rate of seven per cent. on the second mortgage notes. This method continued. October 18, 1894, they gave the plaintiff a check for two hundred dollars, and another for like amount December 6th following; and these, very evidently, to pay the interest then due on the first note. On February 8, 1895, they gave a check of two hundred dollars, and on the twenty-eighth of the same month another for one hundred and fifty dollars; and these to pay interest at the rate of seven per cent. on the notes given December 20, 1893. These payments of interest are in exact accord with the theory that an agreement was made as claimed by the plaintiff, and the explanation of defendants, that somehow they did not notice dates when the interest on each loan matured, and only that it should be three hundred and fifty dollars at one time and four hundred dollars the next, is not reasonable. The plaintiff may have informed Crips of the change, and received his approval, soon after it was made; but it

was undoubtedly not actually seen by him until the last payment of interest, when he conceived the design of avoiding the obligation because of the alteration. This written evidence, however,—the checks, which he prepared,—when considered in connection with the other evidence, has effectually defeated that purpose, and the defendants will be compelled to do as they agreed.

II. The change in the rate of interest from seven to eight per cent., if done fraudulently, would render the note void. *Woodworth v. Anderson,* 63 Iowa, 503; *Bank v. Hall,* 83 Iowa, 645; *Conger v. Crabtree,* 88 Iowa, 536. Even in event of an innocent change without the consent of the payer, recovery cannot be had on the note. *Murray v. Graham,* 29 Iowa, 520; *Eckert v. Pickel,* 59 Iowa, 545. But where it is expressly agreed the alteration shall be made, and this is done by the payee, though without the knowledge of the payer, then an action may be maintained on the note, for no more has been done than to carry out the intention of the parties. See *Grimsted v. Briggs,* 4 Iowa, 559; *Wardlow v. List,* 41 Ohio St. 414.

III. There is another reason for affirming the decree. Section 20 of the rules of this court provides that the abstract shall contain so much of the "record as may be necessary to a full understanding of the questions presented for decision." And rule 68 is, "Preserve everything material to the questions to be decided and omit everything else." Much of the abstract before us is merely a printed transcript of the evidence taken. One thousand three hundred and twenty-five questions and answers are set out in full, and apparently the remaining answers are printed in full, simply omitting the questions. A mass of irrelevant matter is included, which we have been compelled to go through, at much sacrifice of time. The preparation of every detail of a case for this court should command the painstaking care of the attorneys having it in charge, and not be intrusted to stenographers and clerks, as is too often

done.   There may be economy in paying the printer the difference between the cost of printing a transcript and abstract, rather than the lawyer in preparing the latter, but this will hardly justify the loss of time of this court involved in doing more than to examine the portion of the record necessary to a full understanding of the case.   The abstract filed by the appellants furnishes occasion for the application of rule 21, which is as follows: "If it appear from an inspection of the abstract that the appellant has negligently or intentionally failed to comply with the rule requiring only so much of the record as may be necessary to a full understanding of the question presented for decision to be included therein, the court may, in its discretion, order a new abstract prepared in conformity with such rule or affirm the judgment of the lower court without considering the appeal." These rules are made to be observed, and, with the increasing volume of litigation ever pressing upon our attention, we cannot permit our time to be dissipated through their neglect.—AFFIRMED.