MARTIN et al., Trustees of the GERMAN LUTHERAN CONGREGATION, etc., Respondents, v. WHITES and COX, Appellants.

### St. Louis Court of Appeals, December 17, 1907.

1. **PRINCIPAL AND SURETY: Alteration of Contract: Liability of Surety.** The facts in this case are identical with those in the case of Reissaus v. Whites, 128 Mo. App. 135, 106 S. W. 603, where they are fully set forth and the relation of the parties determined.

2. ———: ———: **Release of Surety.** A surety is a favorite of the law and is not bound beyond the strict terms of his contract; any alteration in the terms of his contract by the principal parties without his consent will operate to discharge him from his obligation; this applies to a surety on a bond given by a builder for the performance of a building contract.

3. ———: ———: **Consent of Surety.** Where a surety on the bond of a contractor given for the performance of a building contract, requested the obligee to grant his principal further time to complete the job, he was not released from liability on the bond when such further time was granted. This is true though the obligee, without the knowledge or consent of the surety, interlined the contract showing the extension of time; the alteration in the writing being in conformity with the verbal modification agreed to by the parties and consented to by the surety, the contract was not invalidated thereby.

4. ———: ———: **Deviation from Performance.** While the alteration of a contract between the principals which destroys the identity of the contract will release the surety, an immaterial deviation from the terms of the contract in its performance, without any implied or express agreement to that effect, will not release the surety where the liability of the surety is not changed by such deviation.

5. ———: ———: **Building Contract: Deviation in Making Payments.** Where a building contract required that eighty per cent of the amount due for all of the work done or material used should be paid as the work progressed and only upon the certificate of the architect, the payment for the work as it

progressed without the certificate of the architect would release the surety, if such deviation from the contract substantially impaired the rights of such surety.

6. ———: ———: ———: ———. But in an action against the sureties on the builder's bond with such a provision, where it was shown that payments were made without the architect's certificate, but at no time in excess of the eighty per cent of the labor done and material furnished, and where there was no stipulation in the contract providing what disposition the contractor might make of such amounts paid, the rights of the surety were not impaired, the certificate of the architect was not necessary for his security and his liability on the bond could not be defeated by such payments.

Appeal from Phelps Circuit Court.—*Hon. Robt. Lamar,* Special Judge.

AFFIRMED.

*Watson & Holmes* for appellants.

The law is that where the special contract pleaded as the foundation of plaintiff's right to recover is one of suretyship, wherein plaintiff declares that he performed each and every one of the conditions upon his part, he must show an exact compliance with all of said conditions or terms without departure therefrom, otherwise his proof fails and he cannot recover of the surety. State ex rel. v. Tittman, 134 Mo. 162; Beers v. Wolf, 116 Mo. 179; Obebick v. Major, 59 Mo. App. 289; Evans v. Graden, 125 Mo. 72; Lumber Co. v. Gates, 89 Mo. App. 206; Eldredge v. Fuhr, 59 Mo. App. 44; Nofsinger v. Hartnett, 84 Mo. 549.

*J. B. Harrison* for respondents.

NORTONI, J.—The suit is on a builder's bond. Plaintiffs recovered, and the defendant surety appeals. On the first day of June, 1904, the plaintiffs, trustees of the German Lutheran Congregation of St. James, Missouri, entered into a contract in writing with one W. Vas

Whites, a builder, whereby said Whites bound himself to furnish all of the materials, labor, etc., and erect for plaintiffs a certain house of worship situate at St. James, Missouri. In conjunction with this contract, and of even date therewith Whites executed to plaintiffs a bond conditioned that he would faithfully perform the contract, etc. The defendant, Cox, is surety on the bond. The contractor, Whites, breached the obligation of the building contract by failing to pay certain material bills for which liens were filed against the building and plaintiffs instituted this suit on the bond against Whites the contractor, and Cox, his surety. The matter was referred to Hon. Chas. H. Shubert, a member of the bar, who, after hearing the testimony, found the issues for the plaintiffs and recommended judgment against both defendants. The circuit court overruled defendant's exceptions and entered judgment in accordance with the recommendations of the referee and from this judgment, the defendant surety only appeals.

The facts and arguments thereon as to whether or not this defendant is a principal or surety in the bond, are precisely the same as those in another case now under submission. In this respect, the two cases being identical, it is unnecessary to restate the facts and reasoning thereon which have impelled us to adjudge the defendant Cox to be a surety and not a principal in the bond. The reasoning of the law, which essentially enforced this conclusion, is set forth in the opinion in the case of Reissaus v. Whites, infra, p. 135, 106 S. W. 603.

There are two propositions advanced on behalf of the defendant surety, either of which it is argued, operated his discharge from the obligation assumed in the bond. It is first insisted that the defendant is discharged for the reason plaintiff's agent, without his consent, made certain interlineations in the building contract whereby its provisions were changed to conform to a new agreement made with the builder regarding the

time in which the building should be completed, and thereby destroyed the identity of the contract. The rule is well established to the effect that a surety is a favorite of the law, and his liability is not to be extended or varied beyond the strict terms of his contract. "To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further." Therefore any alteration in the terms of the contract by the principal parties thereto, without the consent of the surety, will operate to discharge him therefrom, and of course, the rule applies to the contract of suretyship evinced by a building bond the same as to any other surety. [Miller v. Stewart, 9 Wheat. 681; s. c. 4 Wash. C. C. Rep. 26; Ryan v. Morton, 65 Tex. 258; State ex rel. v. Tittmann, 134 Mo. 162, 35 S. W. 579; Evans v. Graden, 125 Mo. 72, 28 S. W. 439; Beers v. Wolf, 116 Mo. 179, 22 S. W. 620; Nofsinger v. Hartnett, 84 Mo. 549; Taylor v. Jeter, 23 Mo. 244; Warden v. Ryan, 37 Mo. App. 466; Killoren v. Meehan, 55 Mo. App. 427; Heim Brew. Co. v. Hazan, 55 Mo. App. 277; Mallory v. Brent, 75 Mo. App. 473; Chapman v. Eneberg, 95 Mo. App. 127, 68 S. W. 974; Swasey v. Doyle, 88 Mo. App. 536; Burnes Est. v. Fidelity, etc., Co., 96 Mo. App. 467, 70 S. W. 518; Eldcridge v. Fuhr, 59 Mo. App. 44; Fullerton Lumber Co. v. Gates, 89 Mo. App. 201; The Ashenbroedel Club v. Finlay, 53 Mo. App. 256; Bowman v. Globe Heating Co., 80 Mo. App. 628; Lloyd on Building, sec. 69; 27 Amer. and Eng. Ency. Law (2 Ed.), 494-495; Brandt on Suretyship (3 Ed.), sec 460.]

The contract which is parcel of the bond, of course, required the building to be completed by August 15, 1904. It appearing that this stipulation could not be complied with, Whites, the contractor, called upon plaintiffs' agent and requested one week more time. Plaintiffs' agent suggested an extension of two weeks instead. The suggestion of two weeks was discussed, and although not then agreed upon, was found to be satisfactory to both

parties.    On the following day, Mr. Cox, the surety, requested the plaintiffs' agent to grant Whites such additional time as he required, which request was assented to, and in conformity therewith, plaintiffs' agent, without either the contractor or surety being present, and without their knowledge, interlined in the written contract next after the provision requiring the building to be completed August 15th, as follows:    "(Altered to August 29th, 1904.)"    The argument advanced is that even though the surety requested the plaintiffs' agent to grant Whites such additional time as he might desire, and even though the additional time desired by Whites would expire on August 29th, these facts did not authorize plaintiffs' agent to write into the contract the words, "Altered to August 29th, 1904."    It is said, admitting the proper construction to be that the surety requested an extension of time to the contractor, expiring August 29, 1904, he is nevertheless discharged by the act of plaintiffs' agent in altering the contract when he neither requested nor consented to the act of interlineation, for the reason such interlineation destroyed the identity of his contract.    The whole argument proceeds upon the idea that defendant should have consented to the alteration in the writing rather than to the extension of time which was the change in the contract.    In view of the fact that defendant requested the extension of time and thus voluntarily consented to the modification of his original undertaking to that extent, we are not impressed with the argument that this consent, or in other words, the contract as modified with his consent, is to be defeated for the reason that plaintiff, without express authority from defendant noted the substance of the modification upon the writing.    It is true the alteration changed the terms as expressed by the original writing, but it only changed them in conformity to the modified contract as made by the principal parties and consented to by the surety; and while it destroyed the

identity of the surety's original contract, it indicated the truth with respect to the identity of the modified contract to which the surety had given his consent.   It is the law that when the parties have agreed upon a change in the terms of a contract, as in this case, the contract will not be invalidated by one of the parties, without the knowledge of the other, noting the alteration on the instrument.   [See Phillips v. Crips, 108 Ia. 605; Wardlow v. List, 41 Ohio St. 414; Kane v. Herman (Wis.), 85 N. W. 140; 2 Cyc. Law & Proc., 156.]

2.   The second proposition advanced by defendant for a reversal of the judgment predicates upon the fact that the owner paid to the builder certain of the funds due him without certificates of the architect, when the contract provided for payment only upon such certificates. It is argued because of this,  the defendant is discharged, for the reason that such payments were made in violation of the terms of the contract.   In other words, the payment of these moneys to the contractor by the owner without the certificate of the architect is such a violation or deviation from the express provisions of the contract as to operate a release of the surety who is bound to respond only in accord with the strict terms of his obligation.   Now it is certain that the liability of the surety is *strictissimi juris* and that an alteration or change in the terms of the contract by the principal parties without his consent will operate to release him. This, for the reason the identity of the surety's contract is thereby destroyed and a new and distinct undertaking has been substituted for it by the principal parties.   This doctrine is pertinent in those cases where there has been one or more new express or implied agreements between the principal parties by which the terms and stipulations of the principal contract have been added to or deducted from.   For an application of the doctrine and cases in point, see Reissaus v. Whites, infra, p. 135, 106 S. W. 603; and authorities therein cited.

Martin et al. v. Whites and Cox.

There is a marked distinction however, between a case where the identity of the surety's contract has been destroyed without his consent and a case where there has been merely an immaterial deviation in performance from its terms without any implied or express agreement between the parties adding to or deducting from the original terms. The principle above referred to is entirely without influence under the circumstances mentioned, when there has been a mere permissive deviation in acts and omissions with respect to the performance of the contract. Now in such cases, the matter of the surety's liability or non-liability turns upon the question as to whether or not the deviations by the owner or obligee are material to the surety's risk. The sum and substance of the entire adjudicated law upon this subject is, we believe, that whenever a creditor does an act, whereby injury or loss or liability to loss or increase of risk accrues to the surety without his assent, the surety is entitled by reason thereof, to be discharged. In accord with this doctrine, it has frequently been adjudged in building cases that in the matter of acts and omissions with respect to the performance of the contract assured, mere immaterial variations and insubstantial deviations which do not, in any manner, prejudice the right or encroach upon the liability of the surety, will be insufficient to operate a discharge. [Smith v. Molleson, 148 N. Y. 241; Geo. A. Fuller Co. v. Doyle, 87 Fed. (U. S. C. C. Mo.) 687; 27 Amer. & Eng. Ency. Law (2 Ed.), 494, 495, 496; Brandt on Suretyship (3 Ed.), sec. 445.] See also for a clear enunciation of the same principle, although not building cases, Merrick et al. v. Greeley, 10 Mo. 106; State ex rel. v. Benedict, 51 Mo. App. 642; Jones v. Whitehead, 4 Ga. 397. The principle is peculiarly pertinent to these building contracts where minor and immaterial variations are so frequent, even though the parties exercise a high degree of care and good faith. It is the

law, too, that whatever securities of the principal debtor the creditor may hold as a further assurance of the payment of his debt, or whatever special rights and privileges are vouchsafed to the owner by the builder in a building contract for the purpose of securing to the owner its faithful performance, inure to the benefit of the surety on the builder's bond and the surety is always discharged from liability to the extent to which the creditor or owner has surrendered these securities otherwise than in accordance with the contract or without the consent of the surety. [Taylor v. Jeter, 23 Mo. 244; Evans v. Graden, 125 Mo. 72; Ryan v. Morton, 65 Tex. 258; Warre v. Calvert, 7 Ad. & El. 143; Watkins v. Pierce, 10 Mo. App. 595; Brandt on Suretyship (3 Ed.), secs. 480, 481.]

In accord with these principles, it is obvious that if the payment of the funds mentioned were made to Whites without certificates of the architect when such certificates were required by the contract and the provision requiring the architect's certificates in and of itself vouchsafed an element of security to the owner for the faithful performance of the contract, then the defendant surety was entitled by subrogation to the full benefit of that element of security, be it ever so slight, and is released from the obligation of the bond. He is released for the reason such deviation from the terms of the contract in making such payments, is material in that it operates to substantially impair his rights. It is likewise obivous that if there was no element of security for the performance of the contract vouchsafed in the covenant with respect to the architect's certificates when considered alone, the mere fact that the money was paid to the contractor without the certificates first being obtained, certainly would not operate to the prejudice of the surety. Under such circumstances, when no substantial right of the surety is impinged nor any security inuring to his benefit surrendered, the

surety will not be released even though the principal parties to the contract have slightly deviated from its terms by acts and omissions in matters of performance.

It therefore appears the correct solution of the question of defendant's liability depends upon the true construction of those provisions of the contract pertaining to the architect's certificates when considered with reference to the facts of the case as established by the finding of the referee. Before adverting to an examination of the terms of the contract for the purpose of determining the extent and scope to which it should influence the question involved, it is important, first, to ascertain with certainty the rule concerning the construction of the obligation of suretyship. Now while it is true the surety is a favorite in the law, this cannot be allowed to influence the construction of his obligation voluntarily assumed. The fact of his favoritism imports no more than that he is not liable on any implied engagement as a principal party contracting for his own interests would be, and that he has a right to insist upon a strict performance of any entire condition for which he has stipulated. The contract of the surety is to be construed fairly and in a reasonable manner. The court should endeavor to ascertain the true intention of the parties as disclosed by the instrument identically as when dealing with all manner of other undertakings. In its endeavor to ascertain this intention, the writing should be considered with reference to the situation of the parties at the time it was executed and in the light of the surrounding facts and circumstances which point the purpose for which the particular stipulation was inserted. [Beers v. Wolf, 116 Mo. 179; Smith v. Molleson, 148 N. Y. 241; Brandt on Suretyship (3 Ed.), sec. 107; 27 Amer. & Eng. Ency. Law (2 Ed.), 470.]

With these principles in mind, let us examine the contract. There is but one provision contained therein

which is pertinent to the question under consideration and that is article 9, as follows:

"It is hereby mutually agreed between the parties hereto that the sum to be paid by the owners to the contractor for said work and materials shall be six hundred and eighty-seven and 50-100 dollars ($687.50) subject to additions and deductions as hereinbefore provided and that such sum shall be paid by the owners to the contractor, in current funds, and only upon the certificate of the architect, as follows: Eighty per cent of amount of all work done or material in place, being the basis, when application is made.

"The final payment shall be made within thirty (30) days after the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued."

Now when we view this provision in connection with other portions of the contract and in the light of circumstances attending its execution, the intention of the parties is manifest. It is obvious the only element of security sought to be vouchsafed to the owner by providing for payments only on the certificates of the architect, is that the builder be permitted at no time to draw funds from the owner in excess of the value of "eighty per cent of the amount of all work done or material in place." That is to say, it was contemplated and intended that at all times there should remain in the hands of the owner a fund equal to twenty per cent of the "amount of all work done or material in place." And of course this fund was a security in the hands of the builder which inured to the benefit of the defendant surety, and had it been impaired by the failure to require architect's certificates, there is no doubt the surety would be released thereby. The referee found the fact to be, however, that "at no time did the plaintiffs pay to the contractor any amount in excess of eighty per cent of labor done and material in place,"

etc., etc. This finding of fact by the referee, supported as it is by substantial evidence, stands in the appellate court as a special verdict, (Howard County v. Baker, 119 Mo. 397, 24 S. W. 784; Wiggins Ferry Co. v. Railroad, 73 Mo. 389) and by it, a further examination here on the question of fact is foreclosed. In view of this finding, it appears the only element of security contemplated in this provision of the contract was not impaired because of payments having been made without certificates of the architect. The case of Queal v. Stradley, 90 N. W. (Ia.) 588, is not in point here. In that case it was provided that the fund should be paid only on the certificate of the architect on the basis of eighty-five per cent of the amount earned, etc. Other provisions required the builder to present receipted bills for labor and material as the work progressed, and it appearing that certificates were issued by the architect and payments made by the owner to the builder without first requiring him to produce such receipted bills, the court very properly adjudged the surety to be discharged, saying that although the payments were not in excess of eighty-five per cent, the provision requiring the production of receipted bills was very material for the protection of the sureties. No one will question the soundness of the judgment given in that case. If a like provision were in the contract before us, a like judgment would be given here. In this case, however, there is no word in the contract requiring the builder to produce receipted bills; nor is there any word therein requiring him to make any specific application of the fund to be received. Indeed, as a matter of course, in virtue of his general obligation, it was his duty to pay for all labor and material, but not a word in the contract requires him to so employ the fund received by him thereunder. As the contract stands, it was the duty of the architect to issue certificates upon application, for an amount not exceeding eighty per cent of labor done

or materials in place, and upon these certificates, the builder was entitled to be paid the amount thereon by the owner.    The builder could do as he saw fit with these funds.    Of course it was a moral duty to apply them on accounts for labor and material used in the construction of the building.    There is no stipulation in the contract to that effect, however.    It is therefore manifest that the provision requiring the certificate from the architect, disconnected from that directing payment to be made only on a basis of eighty per cent, contained no element of security which inured to the benefit of this defendant.    It appearing, as found by the referee, that the builder did not, at any time, receive payment equal to eighty per cent of the amount of labor performed or material in place, the security vouchsafed in this provision of the contract remained intact.    It is manifest that under the circumstances stated, a breach of the covenant requiring the architect's certificate was an immaterial variation insofar as the surety was concerned, as it entailed no possible injury upon him.    The case of Smith v. Molleson, supra, is very similar to the case now in judgment and there a like opinion was given by the court.

For the reasons above given, the judgment will be affirmed.    It is so ordered, *Bland, P. J.,* and *Goode, J.,* concur.