TIDEWATER COAL EXCHANGE, INCORPORATED, *v.* THE AMERICAN SURETY COMPANY.

42

(*May* 21, 1928.)

PENNEWILL, C. J., RICHARDS and RODNEY, J. J., sitting.

*Andrew C. Gray* and *James H. Hughes, Jr.*, for plaintiff.

*Clarence A. Southerland* for defendant.

Superior Court for New Castle County, No. 17, January Term, 1927.

RICHARDS, J., delivering the opinion of the court:

It is disclosed by the declaration that Tidewater Coal Exchange, Incorporated, was a Delaware corporation until September 23, 1921, when it was dissolved under the provisions of the statute,

but continues to exercise the powers of a body corporate for the purpose of closing its business. Said exchange, which was a non-profit sharing corporation without any capital stock, was organized for the purpose of promoting better methods of conducting the transshipment of coal at tidewater.

Certain rules were framed by the said exchange under the power conferred upon it by the certificate of incorporation, providing, *inter alia,* that all coal for transshipment at tidewater ports should be graded and classified in designated pools and that the members of the exchange should file with the railroads, and other carriers of coal, orders to deliver any coal consigned to the exchange for their account, at any pier for tidewater shipment, as directed by the commissioner of the exchange. Said rules further provided that the members of the exchange should agree to pay to the carrier all freight and loading charges and to pay to the exchange their assigned proportion of any demurrage on coal shipped to the exchange for their account. Each member of the exchange, as a condition of membership, was required to give bond, with corporate surety satisfactory to the exchange, for at least $10,000 to guarantee the credits in money or property extended to said member by the exchange. The bond upon which this suit was brought was given to the exchange by Archibald McNeil & Sons Company, Inc., and the defendant, American Surety Company of New York, became surety thereon.

The grounds of demurrer relied on by the defendant are these:

Lack of particularity in the assignments of breaches; that demurrage charges cannot be recovered on the bond; and a failure to allege actual loss or damage.

The general principle of pleading that the pleader, in assigning breaches of a bond, or other instrument of like character, must show the cause of action with certainty and precision, cannot be denied. 3 *Ency. P. & P.* 661; *Lanham & Bros. v. Jacoby,* 4 *Penn.* 487, 60 *A.* 863.

This does not mean, however, that where the breach is attended with details and items of account each detail and item must be stated. Allegations which fully inform the defendant of the pre-

cise nature of the claim against him, so that all of the evidence relevant thereto may be introduced are sufficient. 3 *Encyc. P. & P.* 658; 6 *Encyc. P. & P.* 250; 1 *Chitty on Pleading* 235; *Cornwallis v. Savery*, 2 Burr. 772; *Morris Canal, etc., Co. v. Van Vorst*, 23 *N. J. Law* 98; *Mayor and Council of New Castle v. Toman*, 4 Boyce 242, 88 *A.* 65; *Watt's Ex'rs v. Sheppard*, 2 Ala. 425.

In the case of *Lanham & Bro. v. Jacoby, et al.*, 4 Penn. 487, 60 *A.* 863, cited by the defendant, the breaches assigned simply set forth that the defendant failed to make payments to the plaintiff for supplying him with labor and material in the prosecution of a certain contract entered into by him.

■ The court, without assigning any reason, held that the *narr* did not assign the breaches with sufficient particularity, but this case is not controlling as the breaches assigned in the case before us were much more specific. With respect to the breaches for coal credits the number of tons, the value thereof and the pier at which it was delivered were given, and with respect to demurrage the amount charged for each month and the pier at which it was incurred were given. There is no doubt that additional facts might have been alleged but certainly the breaches alleged are sufficient to apprise the defendant of the claims he is required to meet. For these reasons we hold that the breaches are set forth with sufficient particularity.

■ In considering the question of whether demurrage charges are covered by the bond in question, it is proper to take into consideration the business in connection with which said bond was given and the method of conducting the same. As stated above, the exchange was organized for the purpose of facilitating the handling of coal at tidewater; it was intended to benefit both the transportation companies and the coal companies. The exchange was the medium through which the benefit was to be derived; therefore, it is not unreasonable to assume that they intended that the exchange should be protected in every way, or that the exchange expected to be fully protected. It was not to receive, and did not expect, any profit for the part performed by it in this ex-

tensive undertaking. In determining the extent of this protection all acts of the parties to the transaction should be considered. *Nash v. Towne,* 5 *Wall.* 689, 18 *L. Ed.* 527; *Denver & R. G. R. Co. v. Chicago, R. I. & P. R. Co.,* 143 *U. S.* 596, 12 *S. Ct.* 479, 36 *L. Ed.* 277; *Eustis Mining Co. v. Beer (D. C.),* 239 *F.* 976; *Ewen v. Wilbor,* 99 *Ill. App.* 132; *McDonald v. Harris,* 75 *Ill. App.* 111; *U. S. Fidelity, etc., Co. v. Woodson County (C. C. A.),* 145 *F.* 144; *First Natl. Bank of Balt. v. Gerke,* 68 *Md.* 449, 13 *A.* 358, 6 *Am. St. Rep.* 453; *Richardson v. Boynton,* 12 *Allen (Mass.)* 138, 90 *Am. Dec.* 141; *Grizwold v. Hazels,* 62 *Neb.* 888, 87 *N. W.* 1047; *Martin v. Whites,* 128 *Mo. App.* 117, 106 *S. W.* 608.

■ Upon joining the exchange, each member was required to sign an agreement, as provided by the regulations, to the effect that it would pay to the exchange the assigned proportion of any demurrage charges for their account. The rules and regulations of the exchange also provided that each member should file a bond with the exchange, in an amount not less than $10,000 to guarantee the credit extended said member from time to time, and conditioned for the handling of the coal of said member in conformity with the rules and regulations of said exchange.

The main condition of the bond in question is as follows:

"Whereas, the said principal herein has agreed and does hereby agree to indemnify and save harmless the Tidewater Coal Exchange, Inc., against any and all loss, damage, costs and expenses, which it may hereafter suffer, incur, be put to, pay or lay out by reason of any credit or credits in money or property extended to said principal or by reason of any money or moneys paid out on account of said principal, and has agreed and does hereby agree, to pay and discharge forthwith, on demand of the Tidewater Coal Exchange, Inc., each and every such debt, obligation or claim which shall be made, assigned or apportioned against said principal by the Tidewater Coal Exchange, Inc., absolutely, hereby waiving all defenses both of law and equity."

Judge Morris, in a suit against the *New Amsterdam Casualty Company,* 28 *F.* (2d) 511, in which a bond identical with the one in this case was involved, held that credits in property included coal—the intention of the parties being clear that it should. He further said in the same opinion:

"I think that a debt in money from the principal in the bonds to the exchange came into existence upon the breach of the condition of the bonds

and that there was a breach of the condition when the principal in the bonds failed to save and keep harmless and indemnify the exchange for the coal advanced, by the exchange to the principal in the bonds."

Was there not also a breach of the condition of the bond when the principal in the bond failed to save and keep harmless and indemnify the exchange for the demurrage apportioned against said member for which the exchange was responsible to the carrier?

If credits in property includes coal advanced for the principal, certainly credits in money includes demurrage assigned or apportioned against the principal which the exchange is liable to pay.

Section 17 of the rules and regulations of the exchange provides that it will sign the average demurrage agreement with each carrier; the carrier not only looked to the exchange for the payment of demurrage, but exacted a surety bond from it as security therefor. It should not be overlooked that the exchange was the consignee of coal shipped to the various piers by its members and was consequently liable for demurrage accruing thereon. It clearly appears from the declaration that the defendant had knowledge of all the rules and regulations of the exchange.

The decisions of Judge Hand, of the United States District Court, are very interesting, but not in point, as they do not involve a suit on a bond; likewise, the decision of Chancellor Wolcott in the case of *Read v. Tidewater Coal Exchange, Inc.*, 13 *Del. Ch.* 253, 118 *A*. 304; they agree, however, with the position of this court that the exchange was operated for the benefit of both the shipper and the carrier who were to protect it from loss. This court cannot escape the conclusion that the bond was intended to cover demurrage.

The third ground of demurrer is failure to allege actual loss or damage, as required in a suit on a bond of indemnity.

In assigning this ground of demurrer the defendant must necessarily assume that the bond in question is solely one of indemnity. There is no doubt that it does contain certain features of a bond of indemnity, but the following language found therein, "and has agreed and does hereby agree, to pay and discharge forthwith on the demand of the Tidewater Coal Exchange, Inc., each and every

such debt, obligation or claim which shall be made, assigned or apportioned against said principal by the Tidewater Coal Exchange, Inc., absolutely, hereby waiving all defenses both of law and equity," forces the court to the conclusion that it goes much further than a mere bond of indemnity.

All of the facts in connection with the formation of the exchange, the purpose for which it was formed, the requirements of membership and the method by which it did business should also be considered in deciding this question, but it is not necessary to restate them. The court is of the opinion that the words "obligation or claim which shall be made, assigned or apportioned against said principal" include demurrage.

Under the provisions of the membership agreement each member agreed to pay all car demurrage charges assigned against it. The plaintiff makes the contention that the agreement of the principal "to pay and discharge forthwith on the demand of the Tidewater Coal Exchange, Inc., each and every such debt, obligation or claim which shall be made, assigned, or apportioned against said principal by the exchange," is an insurance contract or undertaking and not merely an agreement to indemnify and save harmless.

There is no doubt that this argument contains much force and it leads to the conclusion that only by a narrow and technical construction can the bond be construed as merely one of indemnity. The condition of the bond is that the principal "shall perform the aforesaid agreement, and shall well and sufficiently save and keep harmless and indemnify the said Tidewater Coal Exchange, Inc., its successors and assigns, from all costs, loss and damage which it may be put to, suffer or incur by reason of any credit or credits in money or property extended to it, them, him, or by reason of any money or moneys paid out on its, their, his account."

The primary purpose of creating the exchange was to expedite and simplify the loading and shipment of the coal of its members at tidewater, and no one thing would have tended more to defeat such purpose than the requirement that each carrier should collect from each member the demurrage when due and payable. There

can be no question that demurrage was a money charge against the exchange, under the rules and regulations, and not against the member. This was known to all of the members. It is also clear that the exchange had the right to assign or apportion demurrage charges among its members, and collect the same.

The conclusion has already been reached that the agreements of members with the exchange, made to carry out its purpose, as well as the rules and regulations adopted by it which were assented to by each member and in force at the time the bond under consideration was given, may be considered by the court in determining the intention of the parties to the bond at the time of its execution, unless something appears in the said bond which prevents it. The defendant relies upon the apparent meaning and effect of the word "such" as it appears in the second paragraph of the bond, contending that under the proper grammatical construction thereof it controls the meaning and limits the scope of said bond.

The paragraph of the bond above referred to has been previously quoted in this opinion and it is not necessary to repeat it. It may be helpful, however, to again refer to the fact that the bond requires the principal to pay "each and every such debt, obligation or claim which shall be made, assigned or apportioned against said principal by the exchange." The recitals in the bond which the court are asked to construe have a double aspect or meaning. First, they indemnify the exchange against any loss which it may suffer by reason of any credits in money or property extended to the principal, or by reason of any money paid on his account; and, second, they require the principal to pay, on demand of the exchange, every such debt, obligation or claim which shall be assigned or apportioned against said principal by the exchange. There is no doubt that, under the common-law rule, it is necessary to show actual damage before recovery can be had on a mere bond of indemnity; but in applying this rule the courts have made a distinction between a contract which is merely one of indemnity against damages and a contract of indemnity against liability for damages. Very substantial authorities have held that where there is a contract of indemnity against liability for damages, an action may be

instituted and recovery had as soon as there is a legal liability. *Chace v. Hinman,* 8 *Wend.* (*N. Y.*) 452, 24 *Am. Dec.* 39; *Wicker v. Hoppock,* 6 *Wall.* 94, 18 *L. Ed.* 752; *Hills v. Dow,* 133 *U. S.* 423, 10 *S. Ct.* 413, 33 *L. Ed.* 717; *Johnson v. Risk,* 137 *U. S.* 300, 11 *S. Ct.* 111, 34 *L. Ed.* 683; *Stephens v. Pa. Casualty Co.,* 135 *Mich.* 189, 97 *N. W.* 686, 3 *Ann. Cas.* 478; *Locke v. Homer,* 131 *Mass.* 93, 41 *Am. Rep.* 199; *Penny v. Foy,* 8 *B. & C.* (*Eng.*) 11; *King v. Harman's Heirs,* 6 *La.* 607, 26 *Am. Dec.* 485; *Gilbert v. Wiman,* 1 *N. Y.* 550, 49 *Am. Dec.* 359.

The defendant relies upon the Delaware cases of *Sutton v. Mulford* and *Staats v. Herbert,* neither of which are in point.

In the case of *Sutton v. Mulford,* 2 *Harr.* 72, a bond was given to secure the plaintiff as indorser on the defendant's note; upon judgment being entered on the note and execution issued, the court held that there was no breach of the condition of the bond until Sutton had actually paid something on account of his endorsement.

In the case of *Staats v. Herbert,* 4 *Del. Ch.* 508, Herbert, who was sheriff, levied upon certain goods in the possession of Staats, whereupon Staats gave bond and retained possession of the goods, upon judgment being entered on the bond and execution issued. The Chancellor held that the execution was illegally issued because Herbert had never been held liable for the goods retained to the creditor in the execution under which they were levied upon.

■ In the case before this court the Tidewater Coal Exchange was at all times liable to the carriers for demurrage charges. It was understood and agreed by both the carriers and the coal companies that demurrage charges were to be apportioned, collected and paid by the exchange. The carriers required the exchange to give a bond to guarantee the payment of demurrage charges. Consequently there was no question of whether the liability of the exchange had arisen as in the two Delaware cases above referred to. The bond in question required the principal to pay "each and every such debt, obligation or claim which shall be made, assigned or apportioned against said principal by the exchange."

The court cannot agree with what it considers the limited construction placed upon the bond by the defendant; after considering

the purpose for which the exchange came into existence and the ends desired to be obtained, bearing in mind all the facts and circumstances in connection therewith as in part set forth in this opinion, it cannot escape the conclusion that the bond was given to indemnify the exchange against liability and it is not necessary for the plaintiff to allege actual loss or damage.

The demurrer is, therefore, overruled.