BEERE v. MAYER et al.

(City Court of New York, General Term. December 27, 1899.)

INDEMNITY BOND—LIABILITY OF OBLIGORS.
　　Under an indemnity bond against liability to pay money on a writing re--
　　ferred to in the bond, on which no liability of the obligee could be based,
　　the obligors could not be held for a voluntary payment made by the obligee.

Appeal from trial term.

Action by Fanny Mary Bernard Beere against Marcus R. Mayer
and others. From a judgment for plaintiff, and from an order deny-
ing a new trial, defendants appeal. Reversed, and new trial granted.

Argued before FITZSIMONS, C. J., and SCHUCHMAN and
O'DWYER, JJ.

Dittenhoefer, Gerber & James, for appellant Marcus Mayer.
Mitchel L. Erlanger, for appellants Jefferson, Klaw, and Erlanger.
Howe & Hummel, for respondent.

SCHUCHMAN, J. The complaint alleges that the defendants on
December 8, 1892, made a certain indemnity bond to the plaintiff, as
follows:

"Whereas, Mrs. Bernard Beere claims that she may be or become liable to
Charles Wyndham in the sum of twenty-five dollars a performance for fifty
performances of the play entitled 'The Fringe of Society,' to be given in a tour
in America during the season of 1892 and 1893, on a paper writing of which
the annexed is a copy: and whereas, as a condition for the cancellation of an
agreement between Marcus R. Mayer and the said Mrs. Beere, she requires
that she be indemnified and held harmless against and from the payment of
the said amount due, or any other amount which may become due, to the said
Charles Wyndham thereunder: Now, in consideration of the premises, and of
the sum of one dollar to us in hand paid by the said Mrs. Bernard Beere, the
receipt whereof is hereby acknowledged, we do hereby jointly and severally
promise and agree to and with the said Mrs. Bernard Beere that we will, and
hereby do, indemnify and hold her harmless against and from the payment of
any sum of money to the said Charles Wyndham under or by reason of said
contract."

The annexed paper writing is as follows:

"Charles Wyndham: I agree to take 'The Fringe of Society' for a tour in.
America this year of 1892 and 1893. I will pay 3 per cent. of gross receipts
for each performance,—weekly settlement. I guaranty you at least fifty per-
formances during said tour, or, failing that number, will pay you 3 per cent..

of gross receipts for such performances as take place, and for the balance at the rate of twenty-five dollars per performance. I will not part with this right to the piece without your permission, it being understood that it is reserved for me.

"Oct. 11, 1892."

The complaint further alleges that on December 7, 1894, the plaintiff paid to said Wyndham the sum of £250 sterling, equal to $1,250; that she demanded that money from the defendants; and that they refused to pay; and she now seeks to recover the sum of $1,250 from the defendants by virtue of that indemnity bond. The answer sets up, among other defenses, "that the plaintiff made the payment of the $1,250 to Wyndham without any legal liability existing therefor on her part." At the trial the plaintiff proved: That the defendant Marcus Mayer had employed her as an actress by a written contract as follows:

"Agreement between plaintiff and defendant Marcus R. Mayer, dated August 8, 1891, whereby said defendant engaged the plaintiff for a tour in America and Canada during the season of 1892 & 1893, to commence on November 14th, 1892,—said tour to be for not less than 20 weeks,—upon the following terms: In New York, 25% of the gross receipts each week, guarantied to be not less than 160 pounds per week. In all other cities, 25% of the gross receipts each week, if they shall not exceed 1,200 pounds, and 30% of the gross receipts per week if they exceed said last-named sum, in addition to 25% up to 1,200 pounds, guarantied to be not less than 160 pounds. The defendant Mayer to engage a first-class company, and to pay transportation of same, and to furnish all scenery and advertising of every kind, and also to pay for first-class transportation of plaintiff and her secretary and maid, and to provide plaintiff with a drawing room in a Pullman car and sleeping car for the three, and to pay plaintiff 120 pounds for traveling expenses for the three. Plaintiff agrees to furnish all plays in which she may perform, and to pay all royalties (except as hereafter provided), and furnish all her costumes. Plays to include 'Ariane,' 'Masks and Faces,' and 'As in a Looking-glass.' On all plays other than those mentioned, the said defendant to pay two (2) per cent. towards the royalty paid by her. Her name to appear at head of all advertisements, placards, and playbills, &c., in type larger by half than any other name. She not to play, during her contract, in public, without defendant's consent. He not to assign agreement, but may associate others with him. He to deposit 1,000 pounds, and she 500 pounds, as a guaranty of performance by both; and, for a failure to perform the contract by either, the sum deposited to be forfeited to the other."

—That pursuant to said contract the plaintiff performed as an actress for about four weeks. That the performances were not a success financially. And that at the end of four weeks plaintiff and defendant agreed to cancel said contract of employment, on said Marcus Mayer giving the plaintiff the £1,000 deposited in London as specified in said contract, giving her and her maid a return ticket, and giving the indemnity bond set forth in the plaintiff's complaint.

The evidence shows that this man Wyndham, who was a playwright in London, was a friend of the plaintiff. She testified that she might be liable to him on the said paper writing annexed to the indemnity bond; that she thought she was morally liable to Wyndham, who was a friend of hers. Marcus Mayer, however, testified that he had a contract with Wyndham, and that he was liable to that playwright for certain productions specified in said paper, and that plaintiff had nothing to do with it, but plaintiff said that Wyndham was

a friend of hers, and unless he (Mayer) gave that indemnity bond she would not annul or settle the employment contract obligation. The evidence shows conclusively that the indemnity bond was given by the defendants to the plaintiff solely on the ground that if there was a valid contract between Wyndham and the plaintiff, Mrs. Beere, in regard to the substance contained in the paper writing annexed to the indemnity bond, under which contract she was legally obligated to said Wyndham, then the indemnity bond was to keep her harmless from any such liability. An agreement will be construed according to the intention of the parties. Hutchinson v. Root, 2 App. Div. 584, 38 N. Y. Supp. 16. In this case there is no proof whatsoever in the whole case that there was any contract, written or verbal, entered into between Wyndham and the plaintiff, Mrs. Beere, in regard to the subject mentioned in the paper writing annexed to the indemnity bond, under which she was liable. The paper writing annexed to the indemnity bond does not constitute a contract in writing. It is not signed by any party. There is no verbal contract proved whatsoever. What right, then, did the plaintiff have to pay the £250 to Wyndham? She was under no legal obligation whatsoever to him. That being so, and the defendants having indemnified her simply against the existence of a valid contract to said effect, the defendants are not liable on that bond. Any one who is under no legal obligation or liability to pay a debt is a stranger, and, if he pays the debt, a mere volunteer. Insurance Co. v. Middleport, 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537. The cases of Insurance Co. v. Wilson, 34 N. Y. 275, and Conner v. Reeves, 103 N. Y. 527, 9 N. E. 439, cited by the respondent herein, differ from the case at bar. In the former case there was an admitted sum of money due by the insurance company to a party for damages by fire, which sum was paid over by the insurance company to an attachment creditor on his giving an indemnity bond. In the latter case the bond was given to indemnify against the levying, attaching, and making a sale, under and by virtue of an execution issued to a sheriff on a judgment, of personal property claimed by a third person. In each of these cases there was an existing obligation, to wit, a fixed sum of money due, and a judgment. In this case, however, there is no proof of any existing obligation for which this indemnity bond is given.

Judgment and order appealed from reversed, and a new trial granted, with costs and disbursements to appellant to abide the event. All concur.