## NATIONAL SURETY COMPANY, a Corporation, Respondent, v. W. F. ROTH, Appellant.

**Kansas City Court of Appeals. June 27, 1921.**

1. **CONTRACTS: Indemnity: Surety Cannot Recover Money Voluntarily Paid Where Payment was Outside Terms of Indemnity Contract.** In an action on a contract of indemnity by a surety on a replevin bond, who had obtained such indemnity contract from plaintiff in the replevin action and an individual surety, who had no interest in the property to be replevined, paid the fees and expenses of plaintiff's attorney in the replevin action because it feared that plaintiff would not prosecute the action, but without notice to plaintiff, who had no intention of abandoning the suit, the payment of such fees and expenses by the surety was voluntary and an expense outside the terms of the indemnity contract.

2. ———: ———: **Guaranty: Suretyship: Indemnitor not Liable Beyond Terms of Indemnifying Instrument.** While a distinction exists between contracts of indemnity and contracts of guaranty and suretyship, and the indemnitor should not be restricted or defeated by any strained or narrow technical construction of any one or more words in the indemnity contract, his liability ought not to be enlarged beyond the terms of the indemnifying instrument especially where the contract is manifestly one prepared by the indemnitee and is in the language of its own choosing.

Appeal from the Circuit Court of Jackson County.—*Hon. Thos. B. Buckner*, Judge.

REVERSED.

*L. O. Carter* for respondent.

*Ellis, Gossett, Dietrich & Tyler* for appellant.

TRIMBLE, P. J.—This is an action upon a contract of indemnity given by one Holter and the defendant, Roth, to the plaintiff, National Surety Company, in con-

sideration of the latter executing, *as surety* for said Holter, a replevin bond in an action brought by said Holter to recover possession of certain grading machinery on which he held a chattel mortgage. The case first originated in the justice court, went on appeal to the circuit court where it was tried anew by the court sitting as a jury, and a judgment was rendered for plaintiff in the sum of $197.89 with six per cent interest from April 23, 1918, the date of the judgment rendered by the justice of the peace. The defendant has appealed.

Holter, owning a grading outfit, sold it to a firm of contractors in Kansas City, Kansas, and took a chattel mortgage thereon to secure payment of the purchase price, which mortgage was duly recorded in the proper county. The mortgagors afterward removed the property to Arkansas where they became involved and the outfit was there attached on a claim against them. Holter, to get the property into his possession as mortgagee and out of the possession of the sheriff who held it under the attachment, resorted to replevin and to furnish the required replevin bond applied to the plaintiff, National Surety Company, through its local agent, Algire, in Kansas City, Kansas, to make such bond. Before the Surety Company would do so, it required Holter to execute, with a surety thereon, an indemnity contract. Holter executed it and procured the defendant, Roth, to sign it with him, Roth not having any interest whatever in the machinery nor being otherwise interested in the transaction in any way except to sign the indemnity contract as a friendly act in Holter's behalf. Said indemnity contract is the one on which the suit herein is based.

That portion of the contract involving the matters herein sued for is as follows:

"That we will at all times indemnify and keep indemnified the company, and hold and save it harmless from and against any and all demands, liabilities, loss, damage or expense of whatsoever kind or nature, including counsel and attorney's fees, *which it shall at any*

*time sustain or incur* by reason, or in consequence of having executed the said instrument.''

The replevin suit in Arkansas was disposed of in Holter's favor in every respect, so that the plaintiff herein, the Surety Company, never became liable on the replevin bond. The money sued for in the case at bar, and for which the trial court rendered judgment in plaintiff's favor, is for sums paid out by plaintiff, consisting of a fee of $150 paid to an attorney, a Mr. Carter, of Kansas City, Kansas, to prosecute the replevin suit, his expenses of $37.89 in going down to Arkansas, and $10 for a deposition which the attorney had taken in the replevin case, aggregating the $197.89 for which judgment was rendered with interest.

The contention of the defendant Roth in this suit is that the payment by the plaintiff Surety Company of these sums was *voluntary* and, therefore, they cannot be recovered.

It is shown by plaintiff's own evidence, and it is therefore beyond dispute, that Holter employed Carter, who was, and theretofore had been, his attorney in other matters, to *bring the replevin suit and to carry it through to judgment,* and the two had an understanding about fees and it was expected that the replevin suit would ultimately go to a higher court, though it afterwards turned out that it didn't. Holter was to give him $50 and his expenses when he went down, and the two, Holter and Carter, went to Arkansas two or three times before trial of the replevin suit was reached or obtained, and Holter made two or three $50 payments to him, and also paid the expenses of both himself and Carter, except on the last trip, when the trial of the replevin suit was had. He, Holter, paid his own expenses on this last trip but says he did not pay Carter's. The replevin suit was docketed for trial about the 24th of July, 1912, so that this last trip was evidently made at a time when Carter had been employed by the plaintiff Surety Company and it had decided and told Carter it would pay them and reimburse itself at the expense of Roth, as the facts

hereinafter related will show. Nothing was ever said to Holter about paying them.

At some time prior to July 3, 1912, Carter, without consulting or saying anything to Holter about payment of further fees or expenses, and without ascertaining his attitude toward such matters or toward the prosecution of the replevin suit, wrote to plaintiff's local agent, Algire, telling him there was "some doubt" as to whether or not Holter would "probably prosecute his suit to a final conclusion" and that the purpose of his letter was to notify him, Algire, of the *"probability"* that Holter "will fail to properly prosecute this suit to a conclusion." Thereupon Algire, likewise without saying anything to Holter about it, wrote to Roth and Carter telephoned Roth about fees.

Defendant Roth thereupon went to Holter about it, but Holter denied that he was going to abandon the replevin suit. According to Roth, Holter said, when asked by Roth about it, "No, that is wrong; I am going to go down there; I am staying right with it. I have stayed right with it and paid Mr. Carter money time after time on the contract. He took the case for me. I have been making payments and there is nothing to that whatever." "Never mind, Carter is going to go. He is trying to pull that $75. out of you. He will go when it is time to go. I am going and he is going too."

Holter did not deny this nor was he even asked to explain it. Of course, as this testimony was given by the defendant and the trial court's finding was not in his favor, perhaps it can be said the trial court was not compelled to believe it was true. But it is in keeping with Roth's conceded final refusal to furnish such fees as Algire and Carter had asked him to do; and in view of the conclusive fact that *nothing had been or was ever said* by either Algire or Carter to Holter about his willingness to pay or his attitude toward the replevin suit, and in view of the further indisputable fact that on July 3, 1912, Roth notified plaintiff that it was *Carter* who was seeking to have some one other than

Holter "furnish the sinews of war" and the still further indisputable facts that not only did Holter not abandon the case but he stuck to it throughout until it was won, and that he did not deny that he told Roth this, it would seem that there was no reasonable ground for disbelieving Roth when he testified that Holter told him what he says he did. However, this testimony of Roth's is not set forth as a material fact necessary to a judgment in Roth's favor, but merely as a statement of what defendant claims is the reason for his refusal to furnish money to Carter at that time.

Whether or not Holter told Roth what the latter says he did is not material, but the *indisputable* fact that that nothing was ever said to Holter about payment of further fees or expenses and that he never had any intention of abandoning the replevin suit and did not abandon it, but prosecuted it to the end, is material; and so is the further *indisputable* fact that when it was seen that Roth would not furnish fees and expenses, Carter, *without saying anything to Holter* about them and *without regard to Holter's attitude* toward the prosecution of the replevin suit, advised Algire, plaintiff's agent, that the latter could, under the terms of the indemnity contract, pay his fees and expenses and hold Roth for reimbursement. It is also beyond question, for it is further shown by plaintiffs evidence, that Algire, without being under any obligation to do so, and without consulting Holter at all, and without even telling Roth that he was going to do so, went ahead and paid Carter a fee of $150 and $37.89 for expenses and $10 for a deposition taken in the replevin suit (which last presumably would be taxed as costs in the case and be recovered from the defendants in that case, as Holter won it). It seems to us that under these circumstances such payments were, in legal contemplation, *voluntary* on the part of Algire or, which is the same thing, the plaintiff National Surety Company. It cannot be claimed, nor is any such claim made, that, as Carter was Holter's attorney, his application to plaintiff for further fees

was understood and taken to be Holter's act, for Carter had neither actual nor implied authority from Holter to do this, nor had Holter refused to pay them nor did he intend to abandon the suit. Indeed, he says he always intended to prosecute it and never had any other intention. Besides, on July 3, three weeks before the trial came off, Roth notified plaintiff that he would resist the effort of *Carter* to shift the obligation of Holter to pay the fees and expenses from Holter to Roth. Nor does the fact that Carter realized, from his knowledge of Holter's affairs, that the latter had become "financially irresponsible" change the situation any. Holter does not say that he could not have raised the money, indeed he paid his own expenses on the last trip to Arkansas when the trial was had and he recovered the grading outfit, and he had recovered a portion thereof before that without any suit. The question of whether Holter would or would not pay Carter further or additional fees and expenses was not one for either Carter or Algire to decide or pass upon for themselves, at Roth's expense. They could not substitute their *apprehension* for the actual *fact* of such refusal. Their apprehension that Holter might abandon the case did not create a liability against Roth who contracted to indemnify plaintiff for such attorney fees and expenses as it should *"sustain"* or *incur* . . . *in consequence* of having executed the said instrument," that is, such attorney fees and expense as should become *necessary* for plaintiff to pay because of the fact that it had become Holter's surety on the replevin bond. There is nothing in the contract of indemnity which provided that, as to such fees and expense as are herein sued for, the surety company could, upon its mere *apprehension* that the bond would be broken by Holter, *decide for itself and beforehand,* that it was necessary for it to step in and hire a lawyer and pay his expenses and take charge of the prosecution of the case. It is true, there are subsequent provisions in the contract of indemnity which do give the plaintiff broad powers,

but manifestly a reading of the instrument shows that such provisions are in relation to claims or demands made by persons *claiming under the replevin bond,* that is, when their rights *under the replevin bond* have become apparent by the result of the replevin suit, and then only for such as the company has *"sustained" or "incurred"* or has "become liable to pay." While it may be true that indemnitor Roth's liability should not be restricted or defeated by any strained or narrow technical construction of any one or more words in the indemnity contract, yet, on the other hand, such liability ought not to be enlarged beyond the terms of the indemnifying instrument, especially where the contract is manifestly one prepared by the indemnitee and is in language of its own choosing. Nor do we, in this view of the case, overlook or disregard the distinction that exists between contracts of indemnity and contracts of guaranty and suretyship. For the question of voluntary payments made by an indemnitee are not affected by any such distinction. For, even in an indemnity contract, the indemnitee cannot recover beyond the terms of the indemnity contract, and a voluntary payment made by the indemnitee is not recoverable thereunder. [16 Am. & Eng. Ency. of Law, 177; Beere v. Mayer, 61 N. Y. Supp. 926; Massey v. Shott, 1 Peters C. C. Rep. 132; Bazen v. Roget, 3 Johns. Cas. 87; Donnell Mfg. C. v. Hart, 40 Mo. App. 512, 514, 515.] In this last case cited, it was said: "It is wholly unreasonable to permit defendant without consulting plaintiffs to put a liability upon them *outside of their agreement.* How could it be known that defendant would have been convicted" etc., (italics ours.) So we say in this case, how could it have been known or become certain that Holter would not have done his duty and prosecuted his case to the end? There is no evidence that he would not, on the contrary the evidence is that he would, and he did. Roth did not indemnify plaintiff against Holter's possible failure to fulfill his *contract with Carter,* such failure, even if one had occurred, was outside the indemnity

contract. And the indemnity contract gave plaintiff no right to decide for itself that the replevin bond *might* be broken and therefore, before it could be known whether it was at least necessary for it to do so, it could step in and pay the fees and expenses sued for. We think that in legal contemplation such an act was voluntary on its part; that it was outside the terms of the indemnity contract and that to permit such to be done and then allow recovery therefor against an indemnitor as in this case, would result in injustice being accomplished against all similar indemnitors.

For these reasons we entertain the view that the judgment should be reversed, and it is accordingly so ordered. The other judges concur.