## McCRARY v. UNITED STATES FIDELITY & GUARANTY CO.

### Civ. A. No. 1291.

United States District Court
W. D. South Carolina,
Greenville Division.

Feb. 25, 1953.

J. D. Todd, Jr., Leatherwood, Walker, Todd & Mann, Greenville, S. C., for plaintiff.

H. P. Willimon and W. A. Bull, Greenville, S. C., for defendant.

WYCHE, Chief Judge.

This is an action brought on June 9, 1952 by W. H. McCrary doing business as

McCrary Automatic Sprinkler Company against United States Fidelity and Guaranty Company alone as surety for the prime contractor on a payment and performance bond issued by the defendant in Arkansas on October 26, 1949 on a construction project. It came on to be heard by me without a jury on the 24th of February, 1953.

Pursuant to the provisions of Rule 52 (a), Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon as follows:

## Findings of Fact

There is no conflict as to the facts of this case and I find:

1. That on October 26, 1949 the defendant did for a premium issue its bond wherein it acted as surety for Turner McCoy, the prime contractor on a project to install a sprinkler system in a building in Jacksonville, Arkansas for Redmond Company.

2. The bond issued was a standard form of bond, commonly referred to as a payment and performance bond, which form was prepared and approved by the American Institute of Architects. In this bond the defendant and its principal, Turner McCoy, bound themselves jointly and severally.

3. Plaintiff entered into a contract with Turner McCoy whereby he agreed to perform certain services and labor as a subcontractor in connection with the aforementioned project.

4. Plaintiff entered into the performance of this subcontract and completely performed same on March 7, 1950 for which he became entitled to the sum of $9,472.13 from the prime contractor. The prime contractor has paid to plaintiff only $6,022.41, leaving as due and owing to the plaintiff on his subcontract the sum of $3,449.72. That demand has been made for payment of such sum and it still remains unpaid.

5. That sometime prior to October 25, 1951 the plaintiff brought action on the above mentioned bond by intervening in a pending suit in the United States District Court for the Northern District of Georgia and was denied recovery in that action by Hon. Frank A. Hooper, District Judge, without prejudice by an order filed October 25, 1951.

6. The plaintiff is a citizen and resident of Greenville County, South Carolina, and the defendant is a foreign corporation doing business in South Carolina.

## Conclusions of Law

Jurisdiction is conferred upon this Court because of diversity of citizenship.

Counsel agree that there are two issues raised for determination of the Court. These are:

First: Is the principal an indispensable and necessary party to this action?

Second: Is this action barred because it was not brought within two years from the day final payment became due under the construction contract?

As to the first question, the law seems to be well settled that it is not necessary to join the principal in a suit against the surety on a bond. McAlister v. Fidelity and Deposit Co. of Maryland, D.C., 37 F.Supp. 956; South Carolina Public Service Authority v. New York Casualty Co., D.C., 74 F.Supp. 840. In the McAlister case, the numerous South Carolina authorities are collected.

Defendant, however, contends that Judge Hooper held in the action brought in the Northern District of Georgia in which plaintiff intervened that the principal was a necessary party and that this ruling is res judicata and binding on the plaintiff. He did hold that under the law of Georgia the principal was a necessary party, but his order in that case expressly stated that it was "made without prejudice to his rights to bring any other action." The order being without prejudice cannot have the effect which defendant seeks to give it.

In addition to that, Judge Hooper's ruling was a remedial one based upon the procedural law of Georgia and had nothing to do with the merits of the case. Such a ruling could have no extra-territorial effect in an action brought under the law of South Carolina.

At 15 C.J.S., Conflict of Laws, § 22, p. 952 we find the following:

"Questions relating to parties to an action generally belong to the form of the remedy rather than to the right, and as is discussed more fully in the C.J.S. title Parties, § 2, also 47 C.J. p. 17 note 98 et seq., such questions are decided by the application of the lex fori. The law of the forum generally governs in determining the capacity of a party to sue or be sued, and an incapacity to sue imposed by a foreign law usually will not be recognized. The lex fori determines the joinder of parties."

And at 67 C.J.S. Parties, § 2, p. 895,

"Questions relating to parties to an action are generally determined by the law of the forum."

And at 39 Am.Jur. 851, Parties, Section 3:

"The determination of who are the proper and necessary parties to an action is usually said to belong rather to the form of the remedy than to the right and merit of the claim, and it therefore is ordinarily to be determined by the law of the forum."

At 11 Am.Jur. 500, Conflicts of Laws, Section 187, the following is found:

"Where, according to the law of that state, the contract or transaction is determined to be joint and several, and not merely several, the question whether, upon a joint or joint and several contract or transaction the several defendants must or may be sued jointly or severally, or whether an intermediate number may be sued, is a remedial question which must be determined according to the law of the forum."

I therefore conclude that the principal is not a necessary or indispensable party to this action.

Second: Is this action barred because not brought within two years from the day when final payment became due under the construction contract?

The bond sued upon contains the following provision:

"That no suit, action or proceeding by reason of any default whatever shall be brought on this bond after two years from the day on which the final payment under the contract falls due."

Such a provision in a surety bond has been held inoperative as violative of public policy by the Courts of South Carolina. Barringer v. Fidelity & Deposit Co., 161 S.C. 4, 159 S.E. 373. Section 10–116, Code of Laws of South Carolina for 1952. The bond sued upon here, however, was executed in Arkansas, and such a contractual stipulation is apparently valid in Arkansas. National Surety Co. v. Standard Lumber Co., 186 Ark. 664, 54 S.W.2d 988.

Section 103 (Ark.Stats. § 66–525) of the Insurance Laws of Arkansas provides, however:

"New action after non-suit.—In all actions against insurance companies upon policies of insurance issued by them, if the plaintiff shall suffer a non-suit, or if after a verdict for him the judgment shall be arrested, or if after judgment for him the same shall be reversed on appeal or writ of error, such plaintiff may commence a new action from time to time within one year after non-suit suffered or judgment arrested or reversed; and no stipulation contained in any policy of insurance shall avail to deprive the plaintiff in such action adds (of any) of the benefits of this act (section), but the same shall apply to the limitation of the time of suing stipulated for in the policy of insurance."

This section was construed in Union Central Life Ins. Co. v. Skipper, 8 Cir., 1902, 115 F. 69, 73. There the Court said:

"The obvious purpose of this statute was to avoid the effect of provisions in policies of insurance fixing a short time within which suits must be brought to enforce the collection of sums claimed to be due thereunder, that had become quite common after the decision in Riddlesbarger v. [Hartford] Insurance Co., 7 Wall 386, 19 L.Ed. 257, since the concluding clause of the statute is very emphatic; declaring, in substance, that no such stipulation shall

548

avail to deprive a plaintiff of any of the benefits intended to be conferred by the statute. The legislature manifestly intended to save the right of one claiming under a policy of insurance, if, after having brought an action, and for any reason suffered a nonsuit or dismissal, which was not conclusive of the merits of the controversy, he brought another action within a year."

This statute thus became a part of this bond by operation of law and the provision therein shortening the time for suit to two years was subject to the further provision (imposed by the statute) that if suit was brought within that time which resulted in a dismissal without passing on the merits, plaintiff should have one year from that date to commence a second action.

The action in the Northern District of Georgia was commenced within the two-year period. It, in effect, resulted in a non-suit without prejudice so far as this plaintiff is concerned. The instant action was commenced well within one year of the date of the termination of the Georgia action.

I therefore conclude that this action is not barred because it was not commenced within two years of March 7, 1950.