**Charles E. SORENSEN, Plaintiff,**

v.

**THE OVERLAND CORPORATION,**
**Defendant.**

**Civ. A. 1702.**

United States District Court
D. Delaware.

June 18, 1956.

James R. Morford (of Morford & Bennethum), Wilmington, Del., for plaintiff.

Edwin D. Steel, Jr. (of Morris, Steel, Nichols & Arsht), Wilmington, Del., for defendant.

LEAHY, Chief Judge.

Defendant (formerly Willys-Overland Motors, Inc.) moves for summary judgment.

As former officer and director of defendant, plaintiff sues for $41,350.46 for fees and expenses paid his attorney in defending two lawsuits brought against defendant corporation while plaintiff was a director.[1] Liability is based on Article XXIII of defendant's by-laws, sanctioned under the Delaware Corporation Law, § 2(10), 8 Del.C. § 122. The by-law purports to indemnify officers and directors for expenses incurred in defense of any suit "by reason of his being an officer or director of the corporation".[2]

By contract of June 12, 1944, defendant employed plaintiff as chief executive officer for a period of 10 years. Plaintiff agreed to develop executives, to whom he could delegate his duties, and with approval of the board of directors name a president of defendant corporation. Plaintiff was to receive $520,000 payable every six months in 1/240 installments. Neither termination of employment nor death was to affect defendant's liability to continue such payments. Also on June 12, 1944, defendant issued to plaintiff a stock option contract to purchase 100,000 shares (over a specific period) at $3.00 a share,[3] subject to stockholder approval[4] which was had on July 12, 1944. At the time of director and stockholder approval, plaintiff was not then either an officer or director who approved the employment or option contracts.[5]

In August 1948 a stockholder's derivative suit was started in the Delaware Court of Chancery by Hyman Krinsky against defendant corporation, its officers and directors (including present plaintiff). The Krinsky action involved "acquisition" causes. The complaint attacked three purchases by defendant of real estate, equipment and securities, without corporate need and at fraudu-

---

1. Plaintiff sues also for $10,000 for counsel fees for the suit at bar.

2. Complaint, Par. 11; Answer, Par. 11.
   "Indemnification of Directors and Officers. The corporation shall indemnify each director and officer of the corporation against all or any portion of any expenses reasonably incurred by him in connection with or arising out of any action, suit or proceeding in which he may be involved by reason of his being or having been an officer or director of the corporation (whether or not he continues to be an officer or director at the time of incurring such expenses), such expenses to include the cost of reasonable settlements (other than amounts paid to the corporation itself) made with the view to curtailment of cost of litigation, except that no sums shall be paid in connection with any such settlement unless the corporation is advised by independent counsel that the officer or director so indemnified was not derelict in the performance of his duty as such officer or director. The corporation shall not, however, indemnify such director or officer with respect to matters as to which he shall be finally adjudged in any such action, suit or proceeding to have been derelict in the performance of his duty as such director or officer, nor in respect of any matter on which any settlement or compromise is affected, if the total expenses, including the cost of such settlement, shall substantially exceed the expense which might reasonably be incurred by such director or officer in conducting such litigation to a final conclusion and in no event shall anything herein contained be so construed as to protect or to authorize the corporation to indemnify any such director or officer against any liability to the corporation or to its security holders to which he would otherwise be subject by reason of willful misfeasance, bad faith, gross negligence, or reckless disregard of the duties involved in the conduct of his office. The foregoing right of indemnification shall not be exclusive of other rights to which any director or officer may be entitled as a matter of law."

3. Market for the stock at that time was $12.12 a share; Ritter Aff., par. 7; Fistel Complaint, par. 8; Krinsky Complaint, par. 14(c).

4. Ritter Aff., par. 7.

5. Id., pars. 7, 8.

lently excessive prices from corporations controlled by certain of defendant's directors and stockholders who were alleged also to control defendant corporation. The remaining cause of action attacked plaintiff's employment contract and options. On March 24, 1949, the Krinsky complaint was amended to drop the attack on plaintiff's contracts. On July 27, 1949, the Krinsky action was dismissed in the Delaware Court. But shortly before, on June 15, 1949, another action was started in the United States District Court for Michigan (E.D.) by Abraham Fistel against the same defendants as had been named in the Delaware action, including present plaintiff here. The specific wrong complained of was Sorensen's employment and option contracts.[6] On December 30, 1950, the Fistel suit was dismissed as against all named defendants (for lack of service) except plaintiff herein. Then, on April 14, 1953, the Michigan action was dismissed on the merits with prejudice as against Sorensen.[7] Plaintiff sues here for indemnification for attorney's fees and expenses incurred in defense of the Delaware Krinsky and Michigan Fistel actions.

The defenses to the present action are: the indemnification provisions of the by-laws are not applicable to the Krinsky and Fistel actions, and the instant suit is barred by the Delaware statute of limitations.

■ 1. Defendant's by-law is clear. There is no indemnification unless there are reasonable expenses incurred in connection with a suit involving an officer or director "by reason of his being or having been an officer or director of the corporation". It is plain from a reading of the by-law that its purpose is to enable an officer or director to defend (without cost to himself) litigation when it is charged he acted illegally *in the performance of his duties as an officer or director*. Indemnification was not intended to cover expenses for defense of claims antedating alleged wrongdoing before the officer or director began to serve. By-laws for indemnification are limited to defense of actions based upon dereliction in office.[8] The test, as stated by the Third Circuit in Mooney v. Willys-Overland Motors, Inc.,[9] is whether or not the plaintiff was sued in his capacity as an officer or director, with primary emphasis placed upon the complaint.

■ I think plaintiff is not entitled to recover any expenses incurred by him in defense of the Krinsky and Fistel actions in defense of his personal conduct vis-a-vis the defendant corporation. The employment contract which plaintiff sought to uphold in both actions involved an agreement entered into prior to the time he became an officer and director of defendant. The challenged transactions were personal to Sorensen. He had bar-

6. Fistel Complaint.

7. Present complaint, par. 10; Orders entered in the Fistel action dated December 30, 1950, and April 14, 1952.

8. Indemnification provisions have been adopted for protection of persons willing to serve as officers and directors from unwarranted charges and as inducement to serve when otherwise the potential of legal liability might cause them to refuse corporate management. Corporate Executives' Compensation, Washington (1942 Ed.), p. 334; Commonwealth v. Truitt, 369 Pa. 72, 85 A.2d 425, 30 A.L.R.2d 580, 583; 40 Col.L.Rev. 431, 432; Id., 301, 304; 20 Harvard Business Rev. 244, 246, 252. In Mooney v. Willys-Overland Motors, Inc., 3 Cir., 204 F.2d 888, 898, 39 A.L.R.2d 566. the Court, per Biggs, C. J., said the Delaware statute, 44 Del.Laws c. 125, § 2(10) of the Delaware Corporation Law, providing for indemnification (comparable to the by-law of present defendant) was enacted "to encourage capable men to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity *as directors* will be borne by the corporation they serve." (Emphasis mine.)

The most recent contribution to the literature is "Current Status of Corporate Directors' Right to Indemnification", by Joseph W. Bishop, Jr., in 69 Harv.L.Rev. 1057, (April 1956). In his article the author discusses the development of corporate indemnification at common law and under statute.

9. 204 F.2d 888, affirming D.C.Del., 106 F. Supp. 253; noted in 39 A.L.R.2d 566.

gained at arm's length with defendant corporation. His threatened liability was not as officer or director but as an individual and not for something he did or failed to do while acting in his capacity as an officer or director of defendant corporation.[10] In neither of these causes of action was any charge aimed at Sorensen for official misconduct serving as an officer or director of defendant corporation. Relief was sought against him personally in his *individual capacity* to declare as "null and void" valuable rights which he had acquired individually under his employment and option contracts before becoming an officer or director. I conclude after an examination of the Krinsky and Fistel complaints it is clear as to plaintiff-Sorenson, causes of action in those cases, other than those of "acquisition", were such as to lay outside of the ambit of the indemnification provisions of defendant's by-laws.

Plaintiff did, however, incur certain legal expenses which were considered legitimate by defendant corporation and these were, in fact, paid. Plaintiff submitted a bill for $3,500 which he had received from his attorney Judge Harry S. Toy, after the Delaware Krinsky case was dismissed. Of this defendant paid $2,250 (on May 5, 1950, 5 years before the case at bar was begun) as that portion of the charge relating to the "acquisition" causes alleged in Krinsky which were based on transactions occurring after plaintiff had, in fact, become a director.[11] The remaining portion of $1,250 defendant refused to pay as it covered services rendered by Toy in the Krinsky action to protect plaintiff in his personal rights under his employment and option contracts (before he had become a director). This amount ($1,250) was included within Toy's subsequent statement for $26,350.46[12] which defendant rejected on the same ground.[13]

Obviously the parties did not think the Michigan Fistel litigation a mere continuation of the Delaware Krinsky litigation (which as against Sorensen had been dropped by the amended complaint filed in Delaware) because Toy segregated his fee charges in Krinsky from those of Fistel and this segregation was acquiesced in by plaintiff. Although similar in theory, both actions were considered sufficiently independent to justify separate billing.

■ 2. But if the by-laws are inapplicable, plaintiff then urges recovery on a theory of implied contract because the attorneys of Willys (defendant's former

---

10. In fact, plaintiff (as defendant) emphasized in a memorandum filed in the Fistel action (Ritter Aff., par. 8, p. 4):

"In the present case, the Board of Directors of Willys unanimously voted to enter into the employment contract with Sorensen and as an incentive therefor, to give him an option to purchase stock of the corporation. At the time of the entering into of this contract, Mr. Sorensen was an outsider, not in any way connected with Willys either as a stockholder or as a member of the Board of Directors. * * * We submit that the determination of whether or not Sorensen should have been employed for the benefit of the corporation was a policy of management to be determined by the Board of Directors; and we submit also that their determination thereof in the absence of any fraud is final as between them and the employee, and is not such as could be attacked by a lone stockholder.
\* \* \* \* \*

"(p. 18) To summarize the propositions in this brief, we wish to point out:
\* \* \* \* \*
"(p. 19) (8) That no fraud will be presumed against defendant in signing a contract with the Board of Directors of which he was not then a member.
\* \* \* \* \*
"(p. 19) We submit in view of the law above cited that the action of Willys-Overland Motors, Inc. in employing Charles E. Sorensen, fixing his rate of pay, giving him stock options as incentive compensation, which contracts were approved by the vote of the Board of Directors, of which Sorensen was not then a member, was authorized and legally proper under both statutory and case law."

11. Ritter Aff., pars. 3, 4, Exs. 1–A, 1–B, 2.

12. Ritter Aff., Ex. 3–B, as corrected by Toy Aff., par. 5.

13. Ritter Aff., Ex. 7; Toy Aff., Ex. 9.

name) suggested that Toy appear in the Fistel Michigan suit for plaintiff. Authority for such a proposition may be found both in the by-law and enabling statute reciting indemnification shall not be exclusive of other rights to which any officer or director may be entitled as a matter of law. In the Mooney case, supra, the Court of Appeals upheld this Court in permitting no overriding reference to statute where independent grounds exist for the payment of litigation expenses. In every instance this warrant to employ the means of *ad hoc* contracts and common law theories of recovery outside the statute and by-law must be construed within the demands of public policy.[14]

■ Here, plaintiff has failed to establish the independent legal ground which the appellate court said must be shown. As a resident of Michigan plaintiff was subject to the jurisdiction of the Michigan Federal Court,[15] and had no alternative except to defend the action. None of the other defendants appeared in Michigan,[16] and the action was dismissed as to them for lack of service.[17] Thus no rational basis exists for saying defendant had assumed an implied contract to reimburse Sorensen for either his Krinsky (where Sorensen had not been served and

was not subject to the jurisdiction of the Delaware Court) or Fistel expenses.

3. Whether the by-laws apply or not, defendant raises the Delaware statute of limitations against any recovery here because plaintiff's alleged claim is barred by both the one year [18] and three year [19] periods. Plaintiff contends the three years statute is applicable, but that this action is not barred under either.

■ The one year statute has a comprehensive sweep. It was intended to bar all claims arising out of the employer-employee relationship. The Act bars claims for "wages", "salary", and it likewise applies to "overtime" and to any other "benefits" arising from the corporate-officer employment relationship. The word "benefits" is embracing and covers all advantages growing out of the employment.

■ Indemnification has been referred to as a "form of compensation" and as to directors is more equitable than a "fixed salary".[20] Professor Washington contrasts "direct rewards for services", such as salaries, bonuses and options, with indemnification against litigation expenses as "another type of reward".[21] Risks potential in a corporate office, he states, must be cushioned by "higher pay, either in cash or in an agreement to reimburse

14. In Mooney v. Willys-Overland Motors, Inc., supra, 204 F.2d at page 893, note 7, the Court regarded plaintiff's right to indemnity at common law not within the allegations of the complaint, but possibly otherwise if the right of recovery rested solely on a common law action. It further considered, without deciding, whether plaintiff, under the terms of his contract with defendant to indemnify, excluded himself from a common law remedy.

15. Fistel Complaint, par. 1(c); Ritter Aff., par. 9.

16. Ritter Aff., par. 9.

17. Order December 30, 1950, in Fistel case.

18. Section 8110 of Title 10, R.C.Del., 1953, provides:
"No action for recovery upon a claim for wages, salary, or overtime for work,

labor or personal services performed, or for damages (actual, compensatory or punitive, liquidated or otherwise), or for interest or penalties resulting from the failure to pay any such claim, or for any other benefits arising from such work, labor or personal services performed or in connection with any such action, shall be brought after the expiration of 1 year from the accruing of the cause of action on which such action is based."

19. The pertinent part of Section 8106 of Title 10, R.C.Del., 1953, provides:
" * * * no action based on a promise * * * shall be brought after the expiration of 3 years from the accruing of the cause of such action; * * *".

20. Washington, Corporate Executive's Compensation (1942 Ed.), p. 372.

21. Id., p. 313.

him for his expenditures."[22] All indemnity agreements are based on a *quid pro quo* for services rendered. It has been said the indemnification device is "part of the contract of service" and unless so regarded "there would be a lack of consideration for the agreement."[23] Here, the agreement to indemnify, i. e., By-Law XXIII,[24] is a benefit to be received for officer or director service and a claim thereunder is subject to the one year period of limitation.

▮ Several dates are suggested as to when the cause of action accrued and thus when the statute of limitation commenced to run. These include July 27, 1949 and May 1, 1952, when the last services were rendered by Toy to plaintiff in Krinsky and Fistel, respectively;[25] May 23, 1952, when Toy submitted his final statement to plaintiff;[26] April 29, 1953, when defendant rejected plaintiff's claim;[27] and August 26, 1953, when plaintiff paid Toy in full.[28] For this purpose it is necessary to seek out the nature of the indemnity contract. Indemnity contracts are 1. against *liability* or 2. indemnity against *loss* or *damage*.[29] The distinction between the two is obvious. Indemnity against liability accrues and the statute of limitation begins to run when indemnitor-liability becomes fixed and ascertained or as soon as the debt becomes due. Indemnity against loss or damage does not accrue (nor does the statute begin to run) until the indemnitee has made payment or has actually suffered loss or damage.[30] Here, defendant's by-law undertakes to indemnify officers and directors for expenses "reasonably incurred by him". The word "incurred" means "to become liable for".[31] Where indemnity agreements use "incurred" the indemnity is against liability and not against loss or damage.[32] The parties certainly placed this construction upon the by-laws. Plaintiff, asserting defendant's liability to pay Toy's fees existed, advanced to defendant Toy's statements re Krinsky and Fistel even though at such times the larger part had not been paid by plaintiff.[33] Thus, both plaintiff and defendant interpreted the by-laws as contemplating indemnification against liability and not against loss or damage.[34]

▮ I therefore hold plaintiff's cause of action accrued, and the statute began to run, when Judge Toy rendered his last services and legal liability was established,[35] that is, on July 27, 1949 as to the Krinsky expenses, and on May 1,

---

22. Id., p. 313.

23. 20 Harvard Business Rev. 248.

24. The right of officers and directors to by-law indemnification has been termed "analogous to a contract right". Beneficial Industrial Loan Corp. v. Smith, 3 Cir., 170 F.2d 44, 50.

25. Ritter Aff., Ex. 3–B.

26. Ibid.

27. Toy Aff., Ex. 9.

28. Complaint, par. 13.

29. Tidewater Coal Exchange v. American Surety Co., 4 W.W.Harr. 41, 34 Del. 41, 143 A. 34; Brown v. Mechanics' & Traders' Bank, 43 App.Div. 173, 59 N.Y.S. 354; Calamita v. De Ponte, 122 Conn. 20, 187 A. 129; 42 C.J.S., Indemnity, § 2.

30. Tidewater Coal Exchange v. American Surety Co., supra; Michel v. American Fire & Casualty Co., 5 Cir., 82 F.2d 583; Calamita v. De Ponte, supra; Williston on Contracts § 2004; 54 C.J.S., Limitations of Actions, § 141.

31. Desco Corporation v. U. S., D.C.Del., 55 F.2d 411; State v. Moore, 192 Or. 39, 233 P.2d 253.

32. Beekman v. Vandolsen, 70 Hun. 288, 24 N.Y.S. 414; National Surety Co. v. Roth, 208 Mo.App. 277, 232 S.W. 737; Weinberg Company v. Heller, 73 Cal.App. 769, 239 P. 358; Great Western Oil Co. v. Lewistown Oil & Refining Co., 91 Mont. 146, 6 P.2d 863.

33. Ritter Aff., Exs. 1–A, 1–B, 3–A.

34. I have suggested that interpretation placed by parties on a writing before any controversy arises is entitled to "great weight" and is "the best evidence of their intention". Rosenberg v. Equitable Trust Co., D.C.Del., 68 F.Supp. 991, 995.

35. When an attorney is retained for particular litigation, his right to compensation accrues when the services are con-

1952 as to the Fistel expenses.[36] Such a holding is best in tune with the practical necessity of insuring a speedy disposition of claims for corporate indemnification.[37] The present suit was not commenced until May 4, 1955, more than the 1 year allowed.

Plaintiff is also barred by the three year provision. To escape this, plaintiff interposes the Delaware "journey's account" statute to toll the period.[38] On December 3, 1953, plaintiff sued defendant in the state court in Michigan for the controversial indemnification. The suit was removed on December 5, 1953, to the United States District Court for Michigan. Plaintiff there based his right on Article XXIII of the by-laws for his Krinsky and Fistel expenses, but this suit was dismissed on April 5, 1955 without prejudice to plaintiff. Plaintiff argues the Delaware statute awards a 1 year grace after disposition of the Michigan action.

The statute of "journeys' account" is one founded under English law,[39] and enacted in most jurisdictions today. It simply states if an action brought within the period prescribed by law is dismissed for any reason other than upon the merits, a new action may be commenced within a specified time. This has the effect of tolling the statute of limitation for actions commenced subsequently. Difficulty arises when actions are commenced in different forums within and without the state. The weight of authority has applied "journeys' account" where the first action is a suit in equity and the second an action at law, or vice versa; where both the first and second actions are instituted in the federal forum; and where the first action is in the state court and the second action in the federal court, or vice versa.[40] The case

cluded. See 54 C.J.S., Limitations of Actions, § 135b; and 34 Am.Jur., Limitations of Actions, § 183, for citations.

36. Plaintiff contends his cause of action arose August 26, 1953 when expenses were incurred, that is, when Sorensen paid Toy's final bill. Any other conclusion, says plaintiff, would produce an absurd and unjust result since liability was not created after the services were rendered but was present day by day during the continuance of services. However, such an interpretation of liability-indemnity (which I have already found to be applicable), is extreme.

Plaintiff then relies upon April 29, 1953 when defendant definitely rejected plaintiff's claim. This has no merit. The rejection of an indemnitee's claim by an indemnitor bears no relation to the accrual of the cause of action. See Gaffney v. Unit Crane & Shovel Corp., Del. Super., 117 A.2d 237.

And the rule is settled nothing short of a distinct and unconditional recognition of an obligation will create an extension of the period of limitations. Hart v. De Shong, 1 Terry 218, 8 A.2d 85; Pilch v. Gray, Del.Super., 111 A.2d 835; Schuchler v. Cooper, 5 Pennewill, Del., 42, 62 A. 261. See 34 Am.Jur., Limitations of Actions, § 299; 54 C.J.S., Limitations of Actions, § 311. The evidence shows validity of plaintiff's claim was challenged from the beginning. See: Toy Aff., Exs. 4, 6, 7, 8, 9.

37. See Diamond v. Diamond, 307 N.Y. 263, 120 N.E.2d 819, that provisions for indemnification of officers and directors should be strictly construed.

38. Section 8117(a) of Title 10, R.C.Del. 1953, provides:

"If in any action duly commenced within the time limited therefor in this chapter, the writ fails of a sufficient service or return by any unavoidable accident, or by any default or neglect of the officer to whom it is committed; or if the writ is abated, or the action otherwise avoided or defeated by the death of any party thereto, or for any matter of form; or if after a verdict for the plaintiff, the judgment shall not be given for the plaintiff because of some error appearing on the face of the record which vitiates the proceedings; or if a judgment for the plaintiff is reversed on appeal or a writ of error; a new action may be commenced, for the same cause of action, at any time within 1 year after the abatement or other determination of the original action, or after the reversal of the judgment therein."

39. James I, c. 16, § 4. See 34 Am.Jur., Limitations of Actions, § 279.

40. For extensive discussion of cases: L.R.A.1917C, 208–211; 3 A.L.R. 824–829; 120 A.L.R. 376–388; 142 A.L.R. 1184–1191; 156 A.L.R. 1097–1108.

Removal of the original action to the federal court does not effect the insti-

at bar involves an action started in a court, state or federal, sitting in a state other than where the subsequent action is raised. In those jurisdictions (not Delaware) whose statutes provide the original action to be commenced in "a court of this state", the issue may easily be resolved.

■ The Delaware "journeys' account" statute, as applied to the present problem, has never been considered in any reported opinion.[41] The argument made to embrace all courts within a state—that the theory of "journeys' account" mitigates against the harshness of the statute of limitation and thereby requires a liberality of approach—does not encompass prior actions arising out of foreign courts, state or federal. Where a difference is one of kind and not degree, liberality of construction is not an absolute tool. The Delaware stat-

ute from its plain meaning leads me to believe its provisions were not intended to cover actions commenced beyond the boundaries of the state. I find therefore, under § 8117 the bar of limitation is not avoided by another action failing other than upon the merits in another jurisdiction between the same parties on the same cause of action.[42]

■ 4. Plaintiff's final contention—that by reason of the terms of the stipulation of April 4, 1955, dismissing the Michigan action pursuant to F.R. 41(a), the Delaware action became an extension and continuance thereof whereby defendant has waived or is estopped to assert the defense of the statute of limitation; and that liberal construction of such saving clauses for the purpose of eliminating procedural encumbrances requires this result[43]—is without merit

tution of a subsequent action in the state court. 156 A.L.R. at 1104–1106; contra at 1107.

The "journeys' account" statute has been said not to apply to causes of actions founded solely on statutes which incorporate their own period of limitation into the right. 120 A.L.R. at 376, 379; 34 Am.Jur., Limitations of Actions, § 280; 54 C.J.S., Limitations of Actions, § 288 a.

41. Two early Delaware cases have no application: Bishop v. Wilds' Administrator, 1 Har. 87, 1 Del. 87; Robinson's Executors v. Robinson, 5 Har. 8, 5 Del. 8.

42. For authority, see Herron v. Miller, 96 Okl. 59, 220 P. 36, followed in Tuckman's Estate v. Cottle's Estate, 10 Cir., 175 F. 2d 775; dictum in Jackson v. Prairie Oil & Gas Co., 115 Kan. 386, 222 P. 1114, and Riley v. Union Pacific R. R., D.C. Wyo., 88 F.Supp. 391 [relying on Overfield v. Pennroad Corp., 3 Cir., 146 F.2d 889], affirmed 10 Cir., 182 F.2d 765; 54 C.J.S., Limitations of Actions, § 288 c.

In opposition, plaintiff would cite Caldwell v. Harding, Fed.Cas.No.2,302, 1 Low. 326; Momand v. Universal Film - Exchanges, 1 Cir., 172 F.2d 37; Stanley v. Bird, D.C.W.D.Ky., 85 F.Supp. 358; McCrary v. United States Fidelity & Guaranty Co., D.C.S.C., 110 F.Supp. 545. These are unacceptable.

43. The stipulation of April 4, 1955 provided in part (Toy Aff., Ex. 3):
"It Is, Therefore Stipulated between the

parties hereto that the Motion to Dismiss, for want of jurisdiction, heretofore referred to, be granted by the Court, without prejudice to any existing rights of either party hereto, and without any determination upon the merits, and without prejudice to the right of Plaintiff to conduct a similar action in another and proper jurisdiction in relation thereto, and without costs to either party.

"It Is Further Stipulated that the granting of this Motion shall not be considered a determination upon the merits nor as a voluntary dismissal upon the part of the Plaintiff.

"It Is Stipulated that an Order of the Court be entered to the foregoing effect."

The order of court of April 5, 1955, provided:

"Ordered that the Motion of Defendant to Dismiss the above cause for want of jurisdiction be and the same is hereby granted without prejudice to any existing rights of either party hereto, and without any determination upon the merits, and without prejudice to the right of Plaintiff to conduct a similar action in another and proper jurisdiction in relation thereto, and without costs to either party.

"It Is Further Ordered in accordance with the terms of said Stipulation, that the granting of this Motion shall not be considered a determination upon the merits nor as a voluntary dismissal upon the part of Plaintiff."

and bears no extended discussion. It is sufficient to say it finds no precedent either in authority or reason.

5. It is clear from the record there is no dispute as to any material fact. All questions are based solely upon points of law. Because the claim against defendant is not subject to the indemnification provisions of defendant's by-laws, and because the Delaware statute of limitation is a bar to the present action, defendant's motion for summary judgment will be granted. No costs will be allowed either party. Plaintiff's request for $10,-000 to pay his attorney's fees in the case at bar, is denied.[44]

Submit order.

44. In Mooney v. Willys-Overland Motors, Inc., D.C.Del., 106 F.Supp. 253, 259, although indemnification was granted, an additional claim for legal expenses for the action to recover was refused. Since no cross-appeal was filed on the issue, the question did not come before the Court of Appeals. 204 F.2d 888, 890.